The opinion of the Court was drawn up by
Tenney, C. J.
The defendant was indicted for having forged a deposition, purporting to have been signed by one Joseph Greely, jr., and the certificate of caption thereto, purporting to have been signed by one James M. Sargent, a justice of the peace for the county of Merrimack, i*n the State of New Hampshire; — and also, for causing the same forged deposition and certificate of caption to be read to the Court, as true, on the trial of a libel for divorce of the defendant, from the bonds of matrimony with one Marilla Kimball, his wife. The jury having returned a verdict of guilty, the defendant takes exception, first to the ruling of the presiding Judge, upon certain evidence offered during the trial, instructions to the jury, and refusals to instruct them as by him requested; and second, in declining to quash the indictment on his motion, and refusing to arrest the judgment after verdict.
Many points were presented at the trial, which do not *414 seem to be relied upon by the defendant in his argument before the law Court; upon an examination of these points, we perceive no error in the disposition thereof by the Judge presiding, and they will not be further considered.
Joseph Greely, jr., whose name is affixed to the deposition, alleged to be forged, was examined as a witness at the trial, after the deposition was read to the jury; and, among other things, in the direct examination, he testified that he did not sign the name of "Joseph Greely, jr.,” thereto, or authorize any one to do it; that it was not done with his knowledge or consent, nor did he send it to the defendant, or. to any one. After a cross-examination somewhat extended, the exceptions state, — "The defendant here offered to show by the witness, that the facts stated in the deposition were true, which being objected to, were excluded.”
No evidence coming from this witness, in the direct examination, before the cross-examination, tended in any manner to show that the statements in the deposition, in support of the charge in the libel as the cause of the divorce prayed for, were “true, nor was there any evidence from him, on the point, whether they were true or otherwise, in any way elicited. If the defendant had any motive in the offer of this evidence, it may be supposed to have been for the purpose of obtaining something from the witness called by the State, which might operate in some manner in his favor. Could this have been done under the circumstances, as matter of right?
" It is a well established rule, that the evidence offered must correspond with the allegations and be confined to the point in issue.” 1 Greenl. Ev., § 51. "And the rule excludes all evidence of collateral facts.” Ibid, 448. "In cross-examination, however, the rule is not applied with the same strictness; on the other hand great latitude is allowed by the Judge, in the exercise of his discretion, when, from the temper and conduct of the witness, such course seems essential to the discovery of truth.” " And, as the general course of cross-examination of witnesses, is subject to *415 this discretion of the Judge, it is not easy to establish a rule which shall do more than guide, without imperatively controlling the exercise of this discretion. A party, however, who has not opened his own case, will not be allowed to introduce it to the jury, by cross-examining the witnesses of the adverse party, though, after opening it, he may recaí them for that purpose.” " And it is a well established rule, that a witness cannot be cross-examined, as to any fact, which is collateral and irrelevant to the issue, merely for the purpose of conti’adicting him by other evidence, if he should deny it, thereby to discredit his testimony.” Ibid, §§ 447, 449.
In commenting upon the cross-examination of witnesses, by Mr. Starkie, in 1 Stark. Ev., § 19, p. 132, it is said, " the mode of examination is in truth regulated by the discretion of the Court.”
It is very apparent that the exclusion of the evidence offered was not erroneous, when the question is tested by the principles just stated.
But, on other grounds, the fact offered in evidence by the defendant was inadmissible. The issue before the jury, on the trial of the defendant for the forgery of the deposition, as alleged, did not involve the question, whether Marilla Kimball was guilty of the charge contained in the libel of her husband, the defendant, or not. And if he had called a witness, not before called by the State, to establish such fact, it is not, and cannot be reasonably maintained, that such evidence would be competent. But it is insisted, that the fact offered to be proved was admissible in cross-examination, as having a tendency to show that the defendant was not influenced by fraudulent, intentions, in placing the name of the witness, who knew the truth of the statements therein contained, to the forged deposition. But it may be remarked, in reference to this argiunent, that it often happens, that a litigating party may rely on certain facts, known to exist by one who can be a witness, which standing alone, might establish the issue on his part; but these facts might *416 be essentially qualified, or entirely controlled, by others equally within the knowledge of the witness, or which might be affected in the same manner by other testimony; and hence a motive to manufacture testimony without the knowledge of the other party, and thereby escape the effects of a cross-examination of his own witness, and the direct evidence of those who might be called to testify in Court, or give their depositions in behalf of his adversary.
The right secured to a party, of applying the efficacious test of cross-examination for the discovery of truth, should not be unreasonably abridged. It may, however, be extended so far, that the Court in its discretion may properly arrest it, as we have already seen. And when it is actually used for the purpose of bringing out, "the situation of the witness, with respect to the parties, and to the subject of litigation, his interest, his motives, his inclinations and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers o'f discernment, memory and description,” it becomes important, to enable the jury to judge how far they can rely upon the principal facts disclosed in the direct examination. But when this privilege is resorted to, with the design to introduce irrelevant and objectionable facts, having no connection with those called out in direct examination, in order to make an illegitimate impression upon the minds of the jury, which may favor the party so intending, or create a prejudice injurious to the other, it cannot be regarded as anything short of an abuse of the privilege, and it becomes worse in its consequences than collateral facts, called out for the purpose of contradicting the witness, and more improper, than the introduction of. evidence in support of the case of the party, who offers such evidence, before he has opened his own case. Such a course is unwarranted by legal rules, and may produce great injustice; and it is the duty of the Court to interfere.
It is difficult to perceive, that matter not pertinent to the *417 issue, can be introduced in the cross-examination of an adversary’s witness, having no relation to the inquiries and testimony in the direct examination, when the same evidence is wholly inadmissible, when coming from the witness called by the party making the offer.
It is further contended by the defendant, that he was entitled to show the fact proposed on the cross-examination, as having a tendency of itself to discredit the witness. The evidence does not appear to have been offered for this purpose. But were it otherwise, it is not perceived that the fact, if proved, could have any direct tendency to impeach the witness, so far as to entitle the defendant to pursue the inquiry as a matter of right; on the contrary, it is not only purely collateral, but so remote, if it could have any possible tendency in the supposed direction, as to be clearly within the discretion of the presiding Judge to determine whether it should be admitted or excluded.
The Judge instructed the jury, that "a point had been made, that if the defendant had prepared the deposition and caption, and signed them, and sent them to the witnesses as matter of form, and that if they gave their sanction to the instrument, and returned it to him, and he supposed it was so ratified, it does away the intent to defraud. I instruct you, if the respondent really believed such to have been the facts, it would negative a fraudulent intent. But upon this point you must examine the testimony.” After this, the Judge remarked to the jury, " then another important question arises, 'with what intent was it done?’ For it must have been intended to defraud some one. Was it done with an intent to defraud his wife ? For I believe it is not contended that it was a fraud upon any one else.”
It is insisted in argument by the defendant, that the Judge instructed the jury that the making of the deposition and affixing the name of Greely thereto, and making the caption, and putting to it the attestation of the magistrate, was a fraud upon some one, thus making that, which was for the jury to settle, a matter of law. It is quite manifest that the *418 defendant has mistaken the true character of the instruction. By reading the alleged erroneous proposition, in connection with.what he before said, which is herein recited, it is very obvious, that the Judge did not intend to assert that the acts of making the deposition, caption, &c., must have been intended to defraud some one, but that the jury must find, in order to convict the defendant, that it must have been done to defraud some one. In this view, which is the true one, the instruction was correct.
The jury were informed by the Judge, that they would be authorized to infer an intent to defraud, from the character of the instrument, if they should find it forged. Every person is supposed to intend that which is the natural and ordinary result of the acts done by him, in the absence of all evidence to the contrary. The instruction was a statement of that rule, and, by a consideration of all the evidence derived from the deposition, they might apply it with propriety, if they were satisfied it was applicable.
The additional remark, connected with that just considered, was certainly the expression of an opinion in a matter of fact, but he abstained from giving them an imperative direction as legally binding. This was not erroneous.
The Judge declined to allow the jury to take with them to their room the Revised Statutes, and the requests for instructions made by the defendant, and which were given no‘ further than the same were embraced in the general charge.
It is the duty of the Judge to give the principles of law, which he regards as applicable to the facts, as the jury may find them. And, if he omits to do this, so far as the parties may deem important, in view of the evidence, further instructions may be demanded with propriety. But a party has not the right to require the Judge to furnish the statutes for the jury, and allow them thei’efrom to ascertain the law, and judge o.f its applicability to the facts presented. The construction of statutes is often much aided by general principles, not laid down therein, and can only be known' by careful study of elementary treatises and reports of deci *419 sions, requiring much and long labor. The simple statement of the defendant’s proposition upon this point, cannot fail to impress the mind, well informed on legal subjects, with its utter impracticability, uncertainty, danger and absurdity.
The only object in permitting the jury to see and have with them the instructions requested by the defendant, and refused by the Court, would be to enable them to analyze them, and apply their own knowledge of the law, and make the proper and legal corrections, in their verdict. In the course taken by the Judge, he did not err.
The defendant relies upon the refusal of the Judge to give to the jury the fourteenth, fifteenth and seventeenth instructions requested.
The legal proposition embraced in the first of these is,— that if the defendant believed substantially the evidence in the deposition, and his object was only to obtain an equitable divorce, believing himself entitled thereto, and his sole object was to relieve himself from the inconvenience and odium of living in society, separate from his wjjfe, without the hope of reconciliation: and he did not intend to defraud her of money or other property, or injure her charaeter unnecessarily, he would not be guilty of forgery, though' he might manufacture the deposition and utter the same; and that before the jury could convict, they must be satisfied beyond a reasonable doubt of a different intention. We cannot give so limited a construction to the statute, as to hold that the fraud contemplated thereby, as an element in the crime of forgery, or in the uttering of a counterfeit instrument, was confined to the design of taking money, or other property, or doing an injury unnecessarily to the character of the party attempted to be defrauded. And the sincerity of the belief of the defendant of the truth of the facts stated in the counterfeit deposition, and the objects sought by him, as stated in the request, cannot take away the legal guilt which would attach to him, if this belief and these objects were wanting.
*420 The fifteenth requested instruction was, — "that it is incumbent on the government, to satisfy the jury beyond a reasonable doubt, of the criminal intent of a prisoner, in a case of this kind, as much as it is to satisfy them of the manufacturing of the deposition, and, unless they do so, they must acquit; for intent to defraud cannot be presumed from the simple act of the manufacturing, or forging said deposition.” This instruction was given in the general instructions, so far as it could be legally required. The principle disclosed by the last clause in the Request, by a fair construction thereof, cannot be regarded correct. Though a fraud is not to be presumed, yet, as in numerous other cases, the intention of the one doing such an act may be inferred. And if- one, who shall counterfeit and utter a forged instrument, can give no explanation of the act, the jury may infer the design to defraud.
The seventeenth instruction requested, — "that no fraud in law, could have been committed upon Marilla Kimball at the time of the alleged forgery and uttering, if she was the lawful wife of the respondent,” is supported by no authority cited, by no common sense or moral principle, and is manifestly/absurd.
The objections to the indictment, presented to the Court, in the defendant’s motion to quash the same, are substantially embraced in the motion to arrest the judgment, and may well be considered under the latter.
One ground taken in support of the motion is, — that the person, whose name purports to be signed to the caption of the deposition, as a justice of the peace, does not appear to have had authority, under the laws of this State; or to have been " lawfully empowered,” to take the deposition, by anything appearing in the certificate. And it is insisted, that those depositions alone, which are taken out of the State, can be received in the discretion of the Court, which are in the form prescribed by the statute, for the certificate, and taken by a person "lawfully empowered” to take them.
By R. S., c. 107, § 20, "the Court may admit or reject *421 depositions taken ont of the State by a justice of the peace, notary, or other person lawfully empowered to take them.” "Justice of the peace,” in this provision, it cannot be doubted, was intended to apply to such magistrate, commissioned by the authority of the laws of the State of his residence. And when he affixes to his name, in the certificate, his official character, it is prima facie evidence of qualification to act in that capacity.
The provision, that the Court may exercise a discretion in admitting or rejecting a deposition taken out of the State, has not been regarded as restrictive in the sense contended for by the defendant; but that the Court might admit the deposition, notwithstanding an omission of some things in the certificate, deemed essential, in depositions taken in the State, provided it was taken by a justice of the peace, or a notary, or other person, not a justice of the peace or notary, and provided such other person was lawfully empowered to take it. Wo do not intend to say that a deposition, taken out of the State, according to the requirements of the statute of this State, may not be rejected by the Court, for reasons which satisfy it that it would tend to promote injustice ; but of this, we here give no opinion.
The reason, that the judgment should be arrested because the deposition does not purport to be proof in relation to any pecuniary demand or matter, has been incidentally adverted to before, in the consideration of instructions requested to be given to the jury. The statute certainly does not admit of the limited construction contended for. A person may be defrauded of the dearest rights, besides those appertaining to property of pecuniary value. Good name, liberty and life are secured to every individual by the constitution; and a deposition, counterfeited, and purporting to be so taken, attested and certified, as to constitute legal proof, if genuine, with the intent to deprive him of either, we cannot doubt, would bring the one who made it within the provision of the statute.
It is contended that the indictment is insufficient, because *422 this counts under the statute have therein no allegation who the party was whom the defendant intended to defraud; — or the means to be used in the commission of the fraud, or the object to be accomplished by the same. The statute does not require that the name of the person to be defrauded should be alleged; and this allegation may be regarded as unnecessary. It is clearly alleged, in the indictment, that the defendant " did feloniously make, forge and counterfeit a deposition, with the caption thereto annexed, which false, forged and counterfeit deposition, with the caption thereto annexed, is of the tenor following, that is to say,” &c. " with intent thereby to injure and defraud,” &c. The matter in which the deposition was used is fully stated in the count under the statute for uttering the counterfeit deposition. And it has not been usual to set out the definite object to be accomplished, in making the counterfeit instrument ; in fact, the object may not have been definitely fixed in the mind of the accused. If the instrument has been made with intent to defraud, it is sufficient.
Another ground of the motion in arrest, is, because it does not appear from the indictment that the libel, or petition for divorce, was legally pending in this Court at the time the deposition purports to have been uttered. This is not true in fact. The indictment alleges, that the defendant heretofore, to wit, " on the 29th day of January, A. D. 1859, petitioned in writing this Court, then and there in session,” &g. "to be divorced from.the bonds of matrimony then existing between him and Marilla Kimball, his wife,” &c., and that " said petition for divorce was entered at said January term of this Court, 1859, and that the same was continued to the then next April term of the same, at which term the said petition for divorce came up for trial, and the same was tried on the 18th day of June, in the year aforesaid-, before said Court, then and there being in session.” And it is further alleged that, "on June 15, A. D. 1859, the defendant did feloniously make, forge and counterfeit a certain false, forged and counterfeit deposition,” &c., and that he *423 " did, on said 18th day of June, A. D. 1859, utter and publish the same,” &c. These allegations show that the libel was pending, when the counterfeit deposition was made and uttered, in a Court which must take judicial notice of its jurisdiction.
Another objection to the sufficiency of the indictment, made in the motion in arrest, is, that the full contents of the libel, or petition for divorce, is not set forth therein, so that the Court can judge whether the deposition is receivable as legal proof in support of the same. It is alleged in the indictment, that the defendant petitioned in writing this Court, then in session, [Jan. 9, 1859,] to be divorced from the bonds of matrimony, &c., for desertion without justifiable cause, by Marilla Kimball, his wife, of the defendant for more than five years, then last past. The ground for the divorce, thus alleged in the petition, was one recognized by the practice of the Court as being sufficient to entitle the libellant to a decree therefor, on the introduction of satisfactory evidence; and the indictment was sufficiently explicit and full, to show that the deposition, if genuine, would have been receivable in evidence on the trial of the libel.
A further reason, as stated in the motion, is, that it is not stated, in what purports to be the caption of the deposition, by whom the deposition was written, as required in E. S., c. 107, § 15, head 2. And that the deposition does not purport to be one returnable to any term of this Court, for the trial of civil causes, purporting to have been taken for a May term, 1859, which did not exist as a matter of law.
If the deposition had been genuine, and could not have been received legally as evidence, in the trial of the libel, being void upon its face, it is properly conceded by the attorney general that the judgment must be arrested.
It appears, on inspection, that the deposition purports to have been "written down by the authority of the undersigned justice of the peace.” The statute requires that the justice or notary shall make out the certificate, and annex it *424 to the deposition, therein stating, "by whom the deposition was written; if by the deponent, or some disinterested person, he must name 1dm, and that it was written in his presence, and under his direction.” It is quite obvious, that this requirement has not been observed, in the caption of the instrument in question.
Under the 5th head of the section last referred to, another fact required to be stated in the certificate is, — "the Court or tribunal, in which it is to be tried, and the time and place of trial.” In the certificate, it is manifest that it was intended that these should be stated, but the time of the ses-, sion of the Court, to which the deposition purports to be returnable, is the "May term of said Court, in the year of our Lord one thousand eight hundred and fifty-nine,” which is a term that does not exist in the county of Penobscot for the trial of issues of facts.
These errors, if they occurred in the caption of a genuine deposition taken in the State by a justice of the peace, and to be used therein, would make it inadmissible. But if taken out of the State, would it be admissible, in the discretion of the Court under the provision in statute, c. 107, § 20? We think it clear, that by the authority of decisions, in analagous cases, this question must be answered in the affirmative.
By the statute of 1821, c. 85, § 3, it was made necessary that deponents should be cautioned and sworn, to testify the truth, the whole truth, and nothing but the truth, before they should give their testimony. And it was decided, in the year 1839, that a deposition, taken out of the State, could be used under a provision in the statutes of 1821, c. 85, § 6, similar to that of 1841, c. 133, § 22, and of 1857, c. 107, § 20, notwithstanding the oath was not administered to the deponent before giving his testimony. Blake v. Blossom, 15 Maine, 394. This construction was adopted by the Legislature by incorporating substantially the provisions of the statute of 1821, into the two revisions made afterwards.
*425 We think the omission to administer the oath to the deponent before he gave his testimony, making the deposition merely an affidavit of the facts stated in direct examination, was quite as important as the omission to state by whom the deposition was written, when it was " written down under the authority of the justice of the peace who took it.”
The error in misstating the session of the Court, was unquestionably one of clerical character. Notwithstanding the error, if the deposition had been given by Joseph Greeley, jr., and certified by James M. Sargent, as the one in question purports to have been done, it certainly would have all the real sanctions of truth as much when made returnable to a Court which should commence its session in May as in April. If the deposition had been actually taken as it purports to have been, we cannot doubt that, in the exercise of a discretion under the statute, it might have been admitted.
The forging of any writing, by which a person might be prejudiced, is punishable as a forgery at common law. State v. Ames & al., 2 Maine, 365 ; 3 Chitty’s Crim. Law, 1022. It is said, in Commonwealth v. Ayer, 3 Cush., 150, that " forgery at common law is defined to be a false making, a making malo animo, of any written instrument, for the purpose of fraud and deceit.”
The indictment in the case before us contains a count for forging the deposition and the caption thereto annexed, and another for uttering the same with intent to defraud Marilla Kimball, at common law. Some of the objections to the counts in the indictment under the statute are avoided.
The statute on the subject of forging and counterfeiting, c. 121, § 1, was obviously designed to prescribe the punishment, different from that provided by the common law, rather than to revise the whole subject matter as it stood by the common law. The latter would, by implication, repeal the common law. Commonwealth v. Ayer, before cited*
The first section of chapter 121, in the E. S. of 1857, and of chapter 157, sections 1 and 2 of the revision of 1841, are substantially the same as chapter 11, sections 1 and 2 of *426 the statute of 1821. Under the provision last referred to, the indictment in the case of State v. Ames & al., which was at common law, was sustained. Hence that decision is how the law by Legislative adoption.

Motion in arrest of judgment overruled.

The rulings of the presiding Judge, together with his- instructions to the jury, and his refusals to instruct them, are legally correct. Judgment on the verdict.
Rice, Appleton, Cutting and Mat, JJ., concurred.