### STATE *vs.* BENJAMIN TURNER

### Cumberland.    Opinion September 23, 1927.

*In order to save his rights with regard to evidence admitted over his objection, the party objecting must state, for the record, at nisi prius, the reasons for his objection. Exceptions taken to the admission of exhibits, because of their appearance, may only be considered by this court, when the exhibits are brought before it as a part of the bill of exceptions, unless they can be accurately reproduced in the record, or a description of them agreed upon by the parties.*

*The opinion of lay witnesses, on the question of mental capacity, is not received in this state, the sole exception being that of the attesting witnesses to a will.*

In this case no error of law appears either in the exclusion or rejection of evidence or in the instructions of the court. Every legal right of the respondent was carefully safeguarded. The trial was conducted with absolute fairness. No appeal on the facts is presented.

On exceptions. Respondent was indicted for murder and by a jury found guilty. The alleged shooting was admitted by the respondent and lack of mental responsibility was the only defense offered. Exceptions were taken by the respondent to the admission and exclusion of testimony and to the refusal to give requested instructions. Exceptions overruled.

The case appears fully in the opinion.

*Raymond Fellows, Attorney General, Ralph M. Ingalls, County Attorney, and Franz U. Burkett, Assistant County Attorney,* for the State.

*Joseph E. F. Connolly and Harry C. Libby,* for the respondent.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

PATTANGALL, J. On exceptions. Respondent was convicted of murder. He now asks that the verdict be set aside and new trial granted because of errors in admitting and excluding evidence and in refusing requested instructions.

1. The first exception relates to the admission of photographs showing wounds in the body of the deceased, and to the refusal to order the photographs withdrawn from the evidence at the close of the case.

The rule that the admission of photographs as evidence is within the discretion of the trial judge, is too well settled to admit argument. Respondent urges that, in the instant case the discretion was abused. We do not agree with that contention.

When these photographs were offered in evidence, counsel for respondent objected, giving no reason for the objection which was overruled. Exception was taken. Such an exception need not be considered here. In order to avail himself of the right to have his objections to the exclusion or admission of evidence reviewed by this court, the party whose objections have been overruled at nisi prius must state, for the record, the grounds for his objection. *McKown* v. *Powers,* 86 Me. 296. No reason for this objection appears to have been stated and none is now stated. Apparently no sound reason could have been stated at the time the evidence was offered, for obviously none existed.

But later, counsel filed a motion to order the photographs excluded from the evidence. This was in the nature of a motion to strike testimony from the record, the progress of the case having affected its admissibility. This motion was denied, exception taken and this exception, properly here for consideration, is seriously urged.

In the first instance, the photographs were admissible as tending to prove the cause of death. At the close of the case the only issue actually in controversy was the sanity of the respondent. Obviously the photographs were of no probative value on that issue. But, notwithstanding the narrowing of the controversy, it was still incumbent upon the state to prove all of the necessary elements of the charge of murder beyond a reasonable doubt.

Evidence could not be ordered stricken from the record simply because it did not bear on the question of sanity. Respondent does not so argue. His position is that the photographs, by reason of the

evidence offered by both state and respondent, had become immaterial, and superfluous and that they were prejudicial.

We cannot say that they were immaterial. They were cumulative. But cumulative evidence may not be regarded, necessarily, as immaterial or superfluous or objectionable.

The emphatic claim of the respondent is that they were prejudicial, in that they were "gruesome and morbid." We are unable to judge of that. They were not produced in this court. They were photographic representations of gunshot wounds. Otherwise than that, we have and can have no knowledge of their character. That they were of a peculiar nature, so that the adjectives applied to them by respondent are appropriate, is a matter resting entirely on the bare assertion of counsel, and, necessarily, purely a matter of opinion. It is urged that they were prejudicial and were introduced for the purpose of inflaming and prejudicing the minds of the jury and that that purpose was accomplished, but it is not conceivable that photographs of gunshot wounds could have affected the judgment of jurors on the issue of respondent's sanity, the only issue which they were actually called upon to decide. To argue otherwise would be to deny the jurors the possession of ordinary intelligence. Respondent's argument on this point presents no reason for ordering a new trial.

2. The second, third and fourth exceptions relate to the exclusion of testimony designed to place before the jury the opinion of a lay witness, as to respondent's sanity.

The witness in question, an employee of the Postal Telegraph Co., living in Portland, was at the scene of the shooting and observed the respondent for two or three minutes, then left the place to communicate with officers, returned and was again in respondent's company for about fifteen minutes. He had never seen respondent before this time and never saw him afterwards.

This court has never received opinion evidence on the part of lay witnesses on the question of mental capacity, with the single exception of the attesting witnesses to a will. The rule is otherwise in most jurisdictions but we agree with the view expressed in *Fayette* v. *Chesterville*, 77 Me. 30, wherein it is said:

"Finally, it is contended that the rule which excludes opinion evidence by witnesses acquainted with the person whose sanity is questioned should be abrogated altogether. We are not prepared to ad-

mit the propriety of so radical a change in the practice of our courts, altho we are aware that many courts are at present inclined that way. Where the issue of sanity or insanity is directly raised and the question is a doubtful one the rule which excludes the opinion of non-professional witnesses works favorably. The popular sentiment upon the subject of insanity differs from the legal standard in most cases."

But the evidence offered would have been rejected in any court. The record does not show that the witness had sufficient opportunity to form any such opinion as would have enabled him to have answered intelligently the questions asked him. If he had been an expert alienist, it would have been no abuse of the wide discretion given the court concerning the reception of expert testimony to have rejected the evidence. We certainly know of no jurisdiction in which the opinion of a lay witness, as to the sanity of a man, whom he has seen less than twenty minutes, would be regarded as admissible. The rejection of this evidence, from any point of view was eminently proper.

3. The fifth and last exception is to the refusal of the court to give the following instructions to the jury:

"When the defense of insanity is relied on, the respondent must prove his mental deficiency by a fair preponderance of evidence but at the close of the case the State must have proven its allegations of premeditation and criminal intent by proof beyond a reasonable doubt, *so that if at the close of the case the evidence relating to insanity raises a reasonable doubt in your minds, of the respondent's responsibility, you will acquit him.* The burden of going forward with the evidence shifts but the burden of final and ultimate proof of the required elements rests where it was in the first place, on the state and in the measure beyond a reasonable doubt."

This, in somewhat ambiguous language, was equivalent to instructing the jury that the sanity of the respondent must be proved beyond a reasonable doubt. Intelligent and thoughtful jurors would have been justified in so regarding it.

The presiding judge had given the jury elaborate and painstaking instructions on the points involved in this request and after receiving it he added:

"I am asked to give certain instructions. I cannot give them in the language requested. I will add to what I have said to you in

regard to the burden of proof.   I think I did cover it but that there may be no question in your minds, I will say that the State must make out a case in accordance with the elements of such an offense as my description, all those elements of the offense beyond a reasonable doubt, if those acts were committed by a sane man, sane in accordance with these rules which I have laid down and that requires an intent on his part to these acts.   And unless the State makes out such a case as that, such a case would be murder if the person committing the acts were sane and is sane—unless such a case is made out beyond a reasonable doubt—then the respondent is entitled to an acquittal.   The burden of proving the mental irresponsibility, the lack of mental responsibility, rests then, if such proof has been made out by the state, upon the respondent.   And then if by a fair preponderance of evidence, he shows that, in spite of the fact that what you have in your minds been shown beyond a reasonable doubt, that such a case as I have just described, of murder, has been committed, provided the person were sane who committed it; if he shows, by a fair preponderance of evidence, in spite of that, that he is mentally irresponsible, within the definition that I have given you, if he shows that by a fair preponderance of the evidence, then you must acquit, that is, you must find him not guilty by reason of insanity.''

This instruction supplemented previous instructions on this point following the rule laid down in *State* v. *Lawrence*, 57 Me. 574 and affirmed in *State* v. *Parks*, 93 Me. 208.

The trial judge did not err either in refusing the requested instruction or in the statement of the law which he gave.

There is nothing in the record presented to us to even suggest that every legal right of the respondent was not carefully safeguarded, or that the trial of the case was not conducted with absolute fairness and in accord not only with the rules of law but the  spirit of  justice. No appeal on the facts is presented.   No argument is made that the jury reached a wrong conclusion.   The bill of exceptions certainly presents no error of law.

*Exceptions overruled.*
*Judgment for the State.*