STATE OF MAINE

*vs.*

ANTHONY SMITH AND EDWARD POIRIER.

Oxford.    Opinion, September 7, 1943.

*Theodore Gonya,* County Attorney, for the State.

*Edward J. Beauchamp,*

*John G. Marshall,* for the respondents.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

PER CURIAM.

The respondents appeal from convictions of the crime of rape and also present exceptions to certain rulings of the presiding Justice.

## The Appeals

The State contended that the crime was committed during the evening of February 22, 1942, in the town of Norway in Oxford County. Its testimony in support of the charge came almost wholly from Violet L. Poland, eighteen years old. According to her story she and her friend, Mr. Smith (not the respondent), were at Mac's Roller Skating Pavilion in Oxford. About nine o'clock in the evening she went across the road to call upon her friend, Ann Mayberry. She said: "And when I came out of her house there was a car parked beside the road, and, as I went around the car, the man went ahead and grabbed me and put me in the car. . . . He put his hand over my mouth and pushed me in the car." She said there was another man in the car (respondent Smith) who was in the driver's seat. She had never seen either of them before. They had a gallon of old cider in the car, a part of which had been drunk, and on their way to Norway they continued to drink and tried to get her to drink with them. Before reaching Norway she testified that respondent Poirier "forced" her "by the cement bridge," that they then continued on to a vacant space "behind Jo's restaurant, in Norway," where she testified, "They both forced me." Later in the evening, she said, they took her "up by South Paris, in the woods there somewhere, on a cross road," where Poirier forced her again. They finally left her on Pigeon Hill in Oxford and from there she walked home, a distance of two miles. Upon arrival she immediately got in touch with State Trooper Haskell, to whom she related what had taken place. She claimed injuries to her shoulder from being held "against the door in the car" and to her wrist, "where they would hold on it so tight."

It is unnecessary to state other facts in detail related by her. If believed, her relation of what took place was legally

sufficient to constitute the crime of rape as against both respondents.

The respondents contended that no crime either was consummated or attempted (the indictment contained charges both of rape and assault with intent to commit rape). Their story was (as testified to by only one of them, the other not taking the stand), that they were working "at a South Portland shipyard." Their home was in Lewiston, and on that evening they drove from Lewiston to Oxford "by Mac's Pavilion" and Norway, taking with them a gallon of cider, which they had purchased from a farmer in New Auburn. About half of it had been consumed before they reached Oxford. The defense claimed that as they were driving by the Mayberry house, Miss Poland indicated with her thumb that she would like a ride. They took her in, it was claimed, without the use of any force, she saying that she would like to ride to Norway. They contended that she voluntarily drank some of the cider.

The defense also claimed they stopped at the residence of Mary Kinsman in Norway after the time Miss Poland claimed she had been raped. Mrs. Kinsman testified that the respondents and Miss Poland did stop there between nine and ten o'clock that evening and she came out to the road in response to the blowing of their horn. She identified the respondents and related what then was said and done. She was acquainted with Miss Poland, but not with the men. She said Miss Poland was drunk, that she left the car and went back of her house to a toilet, and then returned and got into the car and drove away with them, although there was an opportunity to escape, and said nothing about having been raped. She also said that Miss Poland tried to get her to go along with her. This whole story of Mrs. Kinsman was denied *in toto* by Miss Poland.

Guilt of the respondents hinged largely upon the veracity of Miss Poland, respondent Smith, and Mrs. Kinsman. The jury must have believed that Miss Poland told the truth and rendered its verdict in reliance upon her testimony. The jury may

well have rejected Mrs. Kinsman's story due to conflicting statements in it, especially as to the day of the claimed stopping at her home. At one point in her cross-examination she said: "I don't remember just exactly to say what date it was. I didn't look on the calendar. I was going by guessing." The jury had the privilege denied us of seeing and hearing the witnesses testify on the stand. Its ability to adjudge veracity was superior to that now afforded us.

"The credence to be given to witnesses, the resolving of conflicts in testimony and the weight to be given to it, are all matters for the jury to settle." *State of Maine* v. *Vallee*, 137 Me., 311, 316, 19 A. (2d), 429, 431.

The single question before this Court on appeal "is whether, in view of all the testimony, the jury were warranted in believing beyond a reasonable doubt, and therefore in declaring by their verdict," that the respondents were guilty as charged. *State* v. *Priest*, 117 Me., 223, 227, 103 A., 359. Also *State* v. *Gross*, 130 Me., 161, 163, 154 A., 187; *State of Maine* v. *Brewer*, 135 Me., 208, 193 A., 834.

We should not sustain the appeals for we cannot say that the jury was not warranted in believing beyond a reasonable doubt and therefore in declaring by their verdict that the respondents were guilty of the crime of rape.

### *Exceptions*

The first exception claimed to have been taken was to this remark made by the Court during the progress of the trial, viz., "That is what she has testified, and I think we ought to avoid, as much as possible, going into too many details and repeating too much in a case like this." Counsel for the defense then said: "I don't like to take an exception, your Honor." The Court then said: "Don't let that bother you at all. Take all the exceptions you want." From the record it would appear that no exception was actually taken, and we so hold. Further-

more, the remark was not prejudicial to the respondents. They were denied no rights. The Court in no way attempted to prevent the presentation of material facts. Apparently his thought was that, with this young girl on the stand compelled to give testimony relating to the claimed violation of her person, repetition should be avoided where possible. The respondents take nothing on this alleged exception.

The only other pressed exception was that taken to a ruling on the admission of certain testimony. Following some evidence given by respondent Smith in cross-examination as to trips that he and the other respondent had been making almost weekly to Norway, this question was asked: "Will you explain to these ladies and gentlemen what these frequent trips to Norway are for?" This was objected to for lack of materiality but admitted. As stated, this question was asked in cross-examination and we consider it a legitimate question. The answer given to the question was: "Well, we knew a lot of girls up there. We usually go up and take them out, but we never had no special girl friend up there." Thus it would seem that the trip started with an intention of contacting girls for some purpose. The presence of Miss Poland on the road was a fact that seemed to fit in to a certain extent anyway with the purpose of the trip. We fail to see any error in the admission of this testimony in cross-examination.

Counsel for the respondents argue in their brief questions of law not saved or referred to in the bill of exceptions. These questions are not such as would seem to demand discussion on the appeals, for it is not shown that manifest error in law occurred in the trial of this case and injustice inevitably resulted therefrom. *State* v. *Wright*, 128 Me., 404, 406, 148 A., 141. Also see *Springer* v. *Barnes*, 137 Me., 17, 20, 14 A. (2d), 503.

> *Appeals denied.*
> *Exceptions overruled.*
> *Judgment for the State against both respondents.*