STATE OF MAINE
*vs.*
DOUGLASS BIDDISON

Kennebec.    Opinion, November 29, 1963.

*Jon Lund,* County Atty.,
*Foahd Saliem,* Ass't. County Atty., for plaintiff.

*Casper Tevanian,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SULLIVAN, J.    Respondent had been accused by indictment of having taken indecent liberties with a male child of the age of 13 years.    Respondent was tried by a jury

whose verdict was guilty. Respondent here prosecutes exceptions to rulings by the presiding Justice who at two junctures during trial denied to Respondent's counsel leave to protract the cross-examination of the complaining State witness concerning the latter's credibility and mendacity and who upon the close of all the evidence denied Respondent's motion for a directed verdict of not guilty.

The statutory text is pertinently as follows:

> "Whoever, being 21 years or more of age, takes any indecent liberty or liberties - - - with the sexual parts or organs of any other person, male or female, under the age of 16 years, either with or without the consent of such male or female person, - - - shall, upon conviction thereof, be punished - - - -" R. S. c. 134, § 6, P. L. 1961, c. 60.

## EXCEPTION 1.

In support of the criminal charge the alleged youthful victim had under direct examination imputed to the Respondent acts committed upon the witness by the Respondent in violation of statute quoted above. Thereafter during cross-examination the following colloquy ensued:

Mr. Tevanian (for Respondent)

> "Q. David, do you go to school now?
> A. No.
>
> Q. Why?
> A. Because I skipped a day the week before last and I got expelled.
>
> Q. Did you have any difficulty with the authorities - - -
>
> MR. SALIEM: I object, your Honor.
>
> THE COURT: Of course, that question has been answered. Now, don't answer the next question until the County Attorney has a chance to object, if he wishes.

MR. SALIEM: I wish to object, your Honor. I know this is cross-examination and Brother Tevanian should be allowed certain leeway, but I don't see the relevancy of this line of questioning.

MR. TEVANIAN: If your Honor please, I am sure that this matter boils down to a question of credibility, and I think that I have a right to go into the credibility of the witness as to his background, present circumstances, and so forth.

THE COURT: I would say you may proceed to examine him with relation to anything connected with his meeting Mr. Biddison, or anything along that line. On collateral matters, I would want to know what they were before I could say that they could be gone into.

MR. TEVANIAN: May we have a conference, your Honor?

(Conference at the bench.)

THE COURT: The jury may be excused. This is in the nature of an offer of proof, so you may go ahead.

(Jury retires to jury room.)

MR. TEVANIAN: I would like to ask some other questions to lay the foundation for the offer of proof.

THE COURT: Go ahead.

MR. TEVANIAN: David, isn't it a fact that you are not attending school now and someone is working with you to try and rehabilitate you?

THE WITNESS: My father is going to take me down there and show me carpenter work, yes.

Q. Where is your father?

A. He is down in Connecticut right now.

Q. And did you run away from your father's home about a month ago?

A. No.

Q. Or two months ago?

A. No.

Q. Didn't your mother have to go down to Connecticut to bring you back?

A. No.

Q. Now, isn't it a fact, David, that you were expelled from school for lying repeatedly and continuously?

A. That isn't what he told me.

Q. That isn't what who told you?

A. Mr. Kinney, the Principal of Schools.

Q. And it is your position here that the only time that you - - -

MR. SALIEM: May it please the Court, I object to the way that question is phrased, 'it is your position here.' This boy is not the Respondent.

MR. TEVANIAN: Well, I will withdraw the question. You say that the only reason you were expelled from school is because you played hooky on one day?

THE WITNESS: That is all I can see that I did.

Q. That is all you can see. Now, you told us on direct examination that you lied some in the past?

A. I did, yes.

Q. Did you lie often?

A. Not continuously, no.

Q. Not continuously?

A. No.

Q. Now, who would you lie to generally?

A. I have lied to my mother at times.

> MR. TEVANIAN: If your Honor, please, I submit to the Court that this is all relevant evidence and proper cross-examination to go before the jury. It is my position that if allowed to cross-examine in this line, which you have overruled, that I could show that this boy is not credible of belief. I don't believe I am going into specific acts of lying, but I think the jury has a right to know.

> THE COURT: Well, I think we are getting into collateral matters. In my nine years on the bench I have never heard of an attorney asking a witness on a similar criminal case if they had lied on prior occasions. The Court will exclude it, and your objections and exceptions may be noted."

The questions and the offer of proof by Respondent's counsel manifest that the interrogator was intent upon the enterprise of discrediting the witness by evincing directly that the witness had been expelled from school, had been a runaway and was addicted to habitual falsehood. The objective of Respondent's counsel was the testimonial impeachment of the witness. The test is whether the questioning constituted cross-examination or an exercise in eliciting evidence to impugn and contradict the witness upon collateral matters.

The complaining witness independently of expulsion from school or of flight from home might or might not have been violated by the Respondent as the indictment charges.

Respondent's counsel inquired of the complaining witness concerning the latter's past conduct with respect to the telling of untruths. Counsel's motive was obviously to expose any chronic moral irresponsibility in the witness as to veracity.

In treating of the testimonial qualification or incapacity of a witness concededly prone to lying Professor Wigmore states a sound general principle.

> "*General Principle.* A quality which affects only the element of Communication is *Moral Depravity.* One who is wholly capable of correct Observation and of accurate Recollection may still be so lacking in the sense of moral responsibility as to be likely to tell his story with entire indifference as to its correspondence with the facts observed and recollected by him. The question is whether any person should upon such grounds be deemed to lack the fundamental capacity of a witness.
>
> "There are two objections to any attempt to establish such an incapacity. The first is that in rational experience no class of persons can safely be asserted to be so thoroughly lacking in the sense of moral responsibility or so callous in the ordinary motives of veracity as not to tell the truth (as they see it) in a large or the larger proportion of instances; or, in more accurate analysis, no such defect, if it exists, can be so well ascertainable as to justify us in predicating it for the purpose of exclusion. The second reason is that, even if such a defect existed and were ascertainable, its operation is so uncertain and elusive that any general rule of exclusion would be as likely in a given instance to exclude the truth as to exclude falsities. It is therefore not a proper foundation for a rule of exclusion."
>
> *Wigmore on Evidence,* 3rd ed., Vol. 2, § 515, P. 602.

The complaining witness's promiscuous falsification, if such there had been, did not disqualify or incapacitate him as a witness. And unless he had told untruths intrinsically related to the offense with which the Respondent in this case is charged extended scrutiny by Respondent's counsel as to complainant's other and extrinsic prevarications would

have been unserviceable and objectionable. At the trial the Justice presiding had become reasonably satisfied that the witness appreciated the solemn nature of an oath. The witness thereupon had been sworn and all of his court testimony was oath bound. When telling any extrinsic untruths outside of court prior to the trial there is no reason to suppose that he was at any time under oath.

It is quite conceivable that in the witness's relations with his scholastic superiors and even with his mother there had been some agitating clash of personalities, factors of embarrassment, fear, resentment, perturbed conscience, etc. To probe such motivating circumstances would have been unpredictably and incalculably digressing, time consuming and experimental.

The cross-interrogation and generalized offer of proof of Respondent's counsel for all that the record discloses were addressed to matters perceptibly collateral to the issues tried in the instant case. The circumstances thus placed in requisition the exercise of a sound discretion by the presiding Justice.

> "- - - - How far or how long counsel may proceed with a witness to test memory or to show lack of veracity, bias, prejudice, etc., is a matter of the court's discretion - - - -" *State* v. *Whitehead,* 151 Me. 135, 141.

> "How far the cross-examination of a witness may be deemed helpful and relevant to the issue being tried, as well as to what extent the accuracy, veracity or credibility of witnesses may be tested, must be left largely to the sound discretion of the presiding judge, and is not open to revision, unless it is shown that such discretion has been exercised in a way that results in the prejudice of a party to the cause by reason either of too narrow restriction or too great breadth of inquiry. - - - -" *Jennings* v. *Rooney,* 183 Mass. 577, 579.

" 'It is a well established rule, that the evidence offered must correspond with the allegations and be confined to the point in issue.' 1 Greenl. Ev., § 51. 'And the rule excludes all evidence of collateral facts.' Ibid, 448. 'In cross-examination, however, the rule is not applied with the same strictness; on the other hand great latitude is allowed by the Judge, in the exercise of his discretion, when, from the temper and conduct of the witness, such course seems essential to the discovery of truth.' 'And, as the general course of cross-examination of witnesses, is subject to this discretion of the Judge, it is not easy to establish a rule which shall do more than guide, without imperatively controlling the exercise of this discretion' - - - -" *State* v. *Kimball,* 50 Me. 409, 414.

The presiding Justice acted judiciously and soundly in his ruling which was the occasion of Exception 1.

## EXCEPTION 2.

During subsequent cross-examination of the complaining witness the Respondent's counsel inquired of the former if it were true that the witness had been expelled from school because he had drawn a knife "on the principal." Witness denied the insinuation. The Justice presiding, upon protest from the State's counsel, denied to Respondent's counsel leave to continue the specific interrogation. We quote from the record:

"MR. TEVANIAN: David, you told this Court that you were expelled from school because you played hooky, is that correct?"

THE WITNESS: That is all I did. I did not lie.

Q. Did you pull a knife on the principal?

A. No.

Q. You are sure of that?

A. No.

Q. You didn't have a knife in your hand - - - -

MR. SALIEM: I object to this line of questioning, your Honor, as bringing in collateral matters, or collateral issues.

MR. TEVANIAN: If this boy was expelled from school because he did draw a knife on the principal of the school, and he just told us that all he remembers being expelled for, or all he knows of, is that he played truant on one day, I think it goes to the credibility of his very testimony on this stand. Well, may I see the Court at the end of the bench, please? (Conference at bench.)"

Respondent's counsel having introduced a collateral issue had received a responsive and negative answer from the witness. The Justice ruled well within the bounds of a sound discretion.

"It is true that a witness cannot be cross-examined on collateral matters for the purpose of subsequently contradicting and impeaching his testimony - - - -" *State* v. *Kouzounas,* 137 Me. 198, 199. Exception 2 must be overruled.

## EXCEPTION 3.

At the close of all the evidence the Respondent filed a motion for a directed verdict of not guilty. The Court denied the motion and Respondent thereupon excepted to that ruling.

In June of 1962 the evidence narrates that the Respondent was more than 40 years of age and that the complaining witness, David, was 13. David testified that the Respondent in June, 1962 at Gardiner in Kennebec County at least twice had taken indecent liberties with David's sexual parts and organ. The Respondent testifying stoutly denied such criminations. The testimony of David was uncorroborated as to the intimate acts of personal outrage but

was confirmed in many details of time, loci, conduct of the Respondent, opportunity and peripheral particulars. *State* v. *Newcomb*, 146 Me. 176, 181, 182. No instigation of the prosecution, no vindictiveness or motive upon the part of the complaining witness is discernible in the evidence. David had been reticent at first. He did not tell his mother or the Police of the Respondent's illicit acts until David's mother by some ruse succeeded in deciding the lad to inform the officers of Respondent's immoral and abusive conduct. The Respondent admitted a singular, impromptu and repeated show of interest in David who was a young stranger to the Respondent. David in testifying told of having suffered 3 distinct sexual violations from the Respondent. A police officer testified that to him David had recounted only 2 such incidents. There was some inconsistency and discrepancy in David's testimony as to the sequence of some of the criminal events which had happened in a period of two days and as to the locations where they had occurred. Some 4 months elapsed between the date of the alleged crime and the time of trial. The 13 year old boy remained insistent in his declarations that the Respondent had perpetrated the definitive criminal acts within the time and area circumscribed by the indictment.

The jury observed the witnesses, heard the testimony and made their grave findings. As this Court said in *State* v. *Hume*, 131 Me. 458, 460:

> "We are of the opinion that, if the testimony of the State's witnesses was believed, it was sufficient to establish the guilt of the respondent beyond a reasonable doubt. - - - -"

There was no error in the overruling of Respondent's motion for a directed verdict.

*The mandate must be: Exceptions overruled; Judgment for the State.*