**STATE of Maine**

v.

**Buddie J. MILLER.**

Supreme Judicial Court of Maine.

April 18, 1969.

———◆———

Daniel G. Lilley, Asst. Atty. Gen., Augusta, Peter P. Sulides, County Atty., Rockland, for plaintiff.

Lewis V. Vafiades, Bangor, John L. Knight, Rockland, for defendant.

Before WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On February 19, 1968 the defendant went to trial in the Superior Court of Knox County on an indictment charging him with inducing and procuring a seven year old child to take indecent liberties with and indulge in indecent and immoral practices with his sexual organs. As the evidence failed to disclose any touching of defendant by the child the Presiding Justice submitted the matter to the jury with the instruction that the jury might return one of two possible verdicts—not guilty or guilty of attempt to induce the child to take indecent liberties. The jury returned a verdict of guilty of attempt. The matter comes here on defendant's appeal.

The defendant raises three issues on appeal. A fourth issue concerning the competence of the child to testify was waived at oral argument.

The child, Annette, eight years old at time of trial, was the sole witness presented by the State and the significant facts related by her testimony are the following:

On March 3, 1967 she was seven years old and living with her mother and grandmother in Rockland in the area served by a small neighborhood store operated by the defendant. She got out of school at about three o'clock and went to the store with a list of groceries prepared by her grandmother. The defendant was alone in the store and took the list and started making up the order. Then he turned off the light in the store window, locked the door and put up a sign which said "Open at 3:30". He called Annette into the back room which is separated from the main store by an open doorway. She said that defendant then took her sweater off and started to unbutton her dress. At this point defendant also unzipped his trousers and exposed himself. She testified that he "kept asking" her to take indecent liberties with his sexual organ, offering her three dollars and a candy bar. She said that she refused and when she began to cry he desisted in his purpose and unlocked the back door. She buttoned up her dress, put her sweater on, refused another offer of candy and went out the back door down a driveway and to the street. She made no complaint upon reaching home. Later testimony revealed that she told of this incident to the Chief of Police three days later but the occasion for the discussion between the Chief and the child was not disclosed.

The relevant portions of 17 M.R.S.A. Section 1951 read:

"Whoever, having attained his 21st birthday, takes any indecent liberty or liberties or indulges in any indecent or immoral practice or practices with the sexual parts or organs of any other person, male or female, who has not attained his or her 16th birthday, either with or without the consent of such male or female person, or, whoever, having attained his 21st birthday, *induces or procures any person who has not attained his or her 16th birthday to take any indecent liberty or liberties or to in-*

*dulge in any indecent or immoral practice or practices with the sexual parts or organs of any person,* male or female, other than the said person who has not attained his or her 16th birthday, shall, upon conviction thereof, be punished by imprisonment at hard labor for not less than one year nor more than 10 years." (Emphasis added)

17 M.R.S.A. Section 251 creates the general offense of statutory attempts, reading, in part:

"Whoever attempts to commit an offense and does anything towards it, but fails or is interrupted or is prevented in its execution * * *."

The indictment charges the defendant with "inducing and procuring" the child to take the prohibited indecent liberties and with "inducing" her to indulge in the indecent and immoral practices.

Defendant's first contention, that the defendant could not properly be convicted of an attempt to violate Section 1951 unless the indictment set out the overt acts on which the State relies, raises an issue already considered in Carson, Petitioner, 141 Me. 132, 39 A.2d 756 (1944).

 There this Court recognized that proper pleading of a charge of an attempt to commit a crime necessitates the description of an overt act or acts toward its consummation. State v. Doran, 99 Me. 329, 59 A. 440, 105 Am.St.Rep. 278 (1904). However the Court concluded that as a charge of commission of a crime necessarily includes that of an attempt to do the act which is alleged to have been completed, if the crime itself is properly charged in the indictment it will support a finding by a jury of guilt of an attempt. In *Carson* the defendant was found guilty of attempting to take indecent liberties. The same reasoning is applicable to a conviction for attempting to induce another to take indecent liberties.

In accepting the holding in *Carson* we by no means suggest that we would approve of any practice of indicting for the crime instead of for the attempt in order to avoid the necessity of alleging overt acts.

The defendant further argues that the evidence, as viewed most favorably for the State, disclosed no overt acts "moving directly toward the commission of the offense after the preparations are made" (State v. Doran, supra) but only acts of preparation or solicitation.

 Certainly, although not required here to allege the overt acts which the State charges were performed by the defendant in the alleged attempt, the State must prove such acts at trial.

"To constitute an attempt, there must be something more than mere intention or preparation. There must be some act moving directly towards the commission of the offense after the preparations are made." State v. Doran, supra at p. 332, 59 A. at p. 441; State v. Sullivan, 146 Me. 381, 82 A.2d 629 (1951).

"In order to constitute the offense of an attempt to commit a crime, the attempt must be manifested by acts which would end in the consummation of the particular offense, but for the intervention of circumstances independent of the will of the party." People v. Gilbert, 86 Cal. App. 8, 260 P. 558 (1927), quoted with approval in Duncan, Petitioner v. State, 158 Me. 265, 183 A.2d 209 (1962).

 There is substantial authority to the effect that mere solicitation alone does not constitute an attempt to commit a crime. 21 Am.Jur.2d, Criminal Law, Sec. 113; 2 Am.Jur.2d, Adultery and Fornication, Sec. 7; 22 C.J.S. Criminal Law § 73b.

 Although the statute uses the words "induces or procures" the Presiding Justice submitted to the jury the sole issue of whether the State had proved an attempt to *induce.* Webster's New International Dictionary, 2d Ed., defines "induce" as "to bring on or about; to effect; cause." Black's Law Dictionary, 4th Ed., defines

"induce" as "to bring on or about, to effect, cause to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on." The term induce signifies a successful persuasion; that the act has been effective and the desired result obtained. State v. Stratford, 55 Idaho 65, 37 P.2d 681 (1934); Hautau v. Kearney & Trecker Corporation, 179 F.Supp. 490 (D.C.1959); Vol. 21 Words and Phrases, Permanent Ed., p. 481. The charge of inducing one to take indecent liberties means that the persuasion has resulted in the doing of the indecent act.

The child's testimony, if accepted by the jury, established that the defendant attempted to induce her to commit the indecent act and that he went beyond mere solicitation. His unbuttoning her dress and exposing himself were more than mere preparation and were overt acts intended to contribute to the obtaining of the illegal result. The jury could properly have concluded that the defendant failed in his purpose because the child refused to comply and began crying—circumstances independent of his will.

Defendant's final attack on his conviction confronts us with the familiar but very troublesome duty of examining the uncorroborated testimony of a child which is flatly denied by the defendant and disputed in several important details by witnesses presented by him. The defendant argues simply that the child's testimony was of such poor quality as to raise reasonable doubts as to the defendant's guilt as a matter of law. We entertain no illusions that children are incapable of falsehood and we recognize their susceptibility to suggestion. We are mindful of the ease with which a false charge can be brought against an innocent man and of the difficulties of defending against such a charge. State v. Newcomb, 146 Me. 173, 78 A.2d 787 (1951); State v. Ranger, 149 Me. 52, 98 A.2d 652 (1953); State v. Fischer, Me., 238 A.2d 210 (1968).

We also recognize that such offenses are seldom committed in the presence of witnesses and that reliance upon the testimony of a child, uncorroborated or with only small corroboration, is frequently necessary in cases involving little children. We endorse the principle that while corroboration is not required in such a case, if it is not present to any reasonable degree the child's testimony must be scrutinized with great care. State v. Wheeler, 150 Me. 332, 110 A.2d 578 (1954). In *Wheeler* we found the prosecutrix' testimony to be inherently improbable and incredible. In State v. Robinson, 153 Me. 376, 139 A.2d 596 (1958) we concluded that the evidence presented by two girls, aged 10 and 11, was so undermined by contradiction and inconsistency that the presumption of innocence had not been overcome.

After careful examination of the record here including that of Annette's appearance before the grand jury, we cannot say that her testimony was contradictory, inconsistent or incredible. The difficulty here lies in the fact that it is disputed by defense witnesses in several serious details.

The Chief of Police, called by the defense, testified that Annette had told him three days after March 3, 1967 that the defendant removed all her clothing but at the trial, nearly a year later, the child said the defendant removed only her sweater and had started to unbutton her dress. The Judge of the District Court, testifying from memory, said that the child's testimony at the probable cause hearing was that her clothing had not been removed. A spectator at the probable cause hearing said she testified defendant did not remove her clothing. The Chief's recollection was that she had also said that defendant had given her a candy bar but Annette's testimony was that he *offered* her one. Annette testified that following the incident she left the building through the back door which defendant had unlocked. The defendant, his wife and Mrs. Gregory, de-

fendant's former employee, testified that that door was sealed with insulating material during March in such a manner that it could not have been opened. A malt beverage delivery man identified a receipt dated March 3, 1967 as one he had given to someone at defendant's store upon payment for a delivery and said that usually but not always he delivered to defendant late in the afternoon. Defendant's cancelled check payable to the malt beverage distributor bearing the same date was signed by another employee who was not present to testify. Defendant said her act of signing this check indicated that he, the defendant, was not present in the store that afternoon. The principal of Annette's school was permitted to testify that the child had lied to him when she was apparently five years old but cross-examination developed that the principal's conclusion was based upon an assumption. (It is well to note here that the refusal of the Presiding Justice to permit impeachment of a child witness by showing previous falsehood in wholly unrelated matters was upheld by this Court in State v. Biddison, 159 Me. 475, 195 A.2d 532 (1963)).

█ The issue thus raised by the defendant requires the evaluation of the child's testimony against conflicting assertions of several adult witnesses, some clearly interested, others with no apparent bias. Although the exposure of discrepancies in a prosecutrix' testimony sometimes may be the only method by which a defendant can demonstrate the falsity of an accusation, some discrepancies in the testimony of a child may be expected when nearly a year has elapsed between incident and trial. State v. Biddison, supra. The likelihood of imperfect communication between a child and an adult questioner is a factor which must also be taken into account, as must be the significance of the particular language used.

█ We have frequently recognized that a jury which has the advantage of observing the appearance and demeanor of the witness while testifying has an ability to evaluate testimony superior to ours. State v. Fischer, supra. State v. Smith, 140 Me. 44, 33 A.2d 718 (1943). Our own disclaimer of naivete concerning the existence of any universal state of truthfulness in children doubtless could be made for the jurors as well. If we have any advantage over the jury it lies in the fact that our study of the printed page does not expose us to impact of personalities and emotional involvement which may sometimes result in verdicts influenced by sympathy or prejudice.

█ We cannot say that this has happened here. The weight to be given to the testimony of each witness lay within the jury's province. The child's story, if believed, was sufficient to establish the defendant's guilt beyond a reasonable doubt. We do not find the conflicting testimony of the other witnesses to be so unimpeachable, so irreproachable or so incapable of rationalization with most of hers as to make her account fatally improbable.

Appeal denied.

WILLIAMSON, C. J., did not sit.