**STATE of Maine**

**v.**

**Stephen BOWEN and Larry Bowen.**

Supreme Judicial Court of Maine.

Nov. 23, 1976.

Michael Povich, Dist. Atty., John Romei, James Patterson, Asst. Dist. Attys., Machias, for plaintiff.

David J. Fletcher, Calais, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE *, WERNICK and ARCHIBALD, JJ.

* Mr. Justice WEATHERBEE sat at argument and participated in consultation but died prior to preparation of opinion.

ARCHIBALD, Justice.

Stephen and Larry Bowen, brothers, were separately indicted for the sale of a single quantity of cannabis. 22 M.R.S.A. § 2384. The indictments were consolidated for trial.[1] Defendants waived jury trial [2] and, after hearing, both were convicted and have appealed. We deny each appeal.

I

 The professed purchaser of the cannabis was the principal prosecution witness. His mother was called as a defense witness and her direct examination was, in part, as follows:

"Q Has he [State's witness] ever lied to you?

A Yes.

Q About important matters?

A Yes.

Q Such as criminal activity?

A Yes.

Q Can you give me an example of that?
[Assistant District Attorney]: I object.

A I'll give you a lot of them.

THE COURT: No . . . specific instances of misconduct are not admissible. But general truth and veracity is."

Appellants argue that the above quoted ruling was error, even though they acknowledge that the testimony sought to be elicited dealt with specific instances of past misconduct unrelated in any way to the alleged illegal sale of cannabis.

Appellants *admit* that not only does Maine precedent support the ruling of the Justice below but also Rule 608(b), Maine

1. Rule 13, M.R.Crim.P.

2. Rule 23(a), M.R.Crim.P.

Rules of Evidence,[3] which became effective February 2, 1976, does likewise. We are urged to overrule this precedent.

We have characterized the probing of a witness for past acts of mendacity, wholly unrelated to an instant situation, as "unpredictably and incalculably digressing, time consuming and experimental." *State v. Biddison,* 159 Me. 475, 481, 195 A.2d 532, 535 (1963).

> "The extent to which counsel may cross-examine witnesses as to collateral issues for purposes of impeachment is left to the sound discretion of the trial justice."

*State v. Brown,* 321 A.2d 478, 483 (Me. 1974). On review we look only to see if there has been an abuse of judicial discretion. *See State v. Gervais,* 317 A.2d 796, 800 (Me.1974); *State v. Ryder,* 348 A.2d 1, 4 (Me.1975).

> "Specific acts of bad conduct may not be inquired of upon cross-examination for the sole purpose of impugning the character of the witness so as to make his testimony unworthy of belief."

*State v. Brown,* 321 A.2d at 482.

Unless the witness "told untruths intrinsically related to the offense" with which appellants are charged, extended scrutiny by defense counsel as to other and extrinsic prevarications would have been "unserviceable and objectionable." *See State v. Biddison,* 159 Me. at 480–81, 195 A.2d at 535.

We see no reason to overrule our past decisions. To do so would cast doubt on the viability of Rule 608(b), which we be-

lieve has sufficient latitude to ensure fairness at the trial level.

The Justice was correct in his interpretation of Maine law.

## II

▉▉▉ The Justice below would not accept the opinion of the mother of the State's witness that her son was mentally incompetent. Appellants contend such ruling was error.

In the past this Court has not allowed opinion evidence from lay witnesses on the question of mental competency, except on the part of attesting witnesses to a will. *State v. Turner,* 126 Me. 376, 378, 138 A. 562, 563 (1927).

Appellants adopt the rationale that since Rule 701, Maine Rules of Evidence, is "declarative of the present Maine law" this opinion testimony should have been admitted. We can agree that opinions of lay witnesses may now be admitted if they are

> "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Rule 701, Maine Rules of Evidence.

However, we cannot agree that the lay opinion of mental incompetence here offered falls within Rule 701. The defense witness had not observed the actions or demeanor of her son at the time of the alleged sale. Therefore, his conduct on that particular day was not within her personal range of perception. Her opinion as to her son's mental competency was based on what she had observed in the past.

3. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

Opinion evidence deemed "helpful" has traditionally been admitted out of necessity as a "short-hand rendering of facts." Speed, identity, age, size, quantity, etc., under appropriate circumstances fall within this rule. See Advisers' Note, Rule 701, Maine Rules of Evidence, at 45–46.

There was no evidence that the witness had any expertise in matters of mental competence and, therefore, her opinion would not be "helpful" to a clear understanding of her testimony. Neither would it be "helpful" if, by relating relevant facts, the single Justice would be able to formulate his own conclusion of the competency of the State's witness. Thus, under neither the rule in *State v. Turner, supra,* nor under Rule 701 would the opinion evidence be admissible.[4]

### III

The final point argued is that the evidence was insufficient to support a finding of guilt. Neither appellant filed a motion for judgment of acquittal under Rule 29, M.R.Crim.P., or a motion for a new trial under Rule 33, M.R.Crim.P. The scope of appellate review is, therefore, limited to a review of the record to determine if the totality of the evidence supports the convictions. *State v. Hanson,* 331 A.2d 375, 378 (Me.1975). *See State v. Donovan,* 344 A.2d 401, 404 (Me.1975). Our review of this record leads us to conclude that the fact finder "could have rationally found beyond a reasonable doubt that [appellants were] guilty as charged." *State v. Clark,* 365 A.2d 1031 (Me. opinion dated November 17, 1976).

The entry is:

Appeals denied.

POMEROY and DELAHANTY, JJ., did not sit.

All Justices concurring.

4. We have dealt with this point in the context argued by both the appellants and the State. However, we have serious doubt whether the record, in fact, raises the point debated. Defense counsel at no time made "known to the court the action which he desire[d] the court to take or his objection to the action of the court and his grounds therefore." Rule 51, M.R.Crim.P.
The transcript discloses the following:
"Q I believe I—[Defense witness], have you had an opportunity to observe your son's general mental state?
A Yes, I have.
Q And what would you say that mental state was?
A Well, he's incompetent.
Q When—
[Assistant District Attorney]: What was that again? I'll object to her answer.
THE COURT: This seems to me to be a matter of medical opinion. If the doctors have looked into this, they can testify.
A You mean I don't know what his behavior is?
THE COURT: You cannot testify as to what the doctors told you. (To [Defense Counsel]) If you had a medical examination, a medical opinion, the doctors can give it.
BY [Defense Counsel]:
Q He has contradicted himself in talking to you and these past statements that he made today on the stand, is that right?
A Yes.
Q How many times?
A Many times. In fact, every time he tells it it's a different story.
[Defense Counsel]: Okay. Your witness."
The Justice below seemed to believe that medical evidence on this matter was available. He was not told otherwise. In short, no objection was entered to the ruling, "You cannot testify as to what the doctors told you," nor was he advised that defense counsel wished the lay witness to express her opinion on the subject of her son's mental competence.