### STATE OF MAINE *vs.* FOREST CLAYTON POND.

### Penobscot. Opinion October 12, 1926.

*When the death of another is caused unintentionally by some unlawful act not amounting to a felony nor likely to endanger life, or while doing some lawful act in an unlawful manner, it is involuntary manslaughter.*

*Every act of gross carelessness, even in the performance of what is lawful, and a fortiori of what is not lawful, whereby death ensues, is indictable either as murder or manslaughter.*

*There is little distinction except in degree between a will to do wrong and an indifference whether wrong is done or not.*

In the instant case whether the respondent's act be viewed as assault and battery or as gross and culpable negligence, or both, the essential elements of the crime of manslaughter are present.

On appeal and general motion. Respondent was indicted for manslaughter and tried by a jury at the September Term, 1925, of the Superior Court for Penobscot County, and found guilty. Counsel for respondent filed a motion for a new trial addressed to the presiding Justice which was refused and respondent appealed. A general

motion for a new trial was also filed by respondent.   Appeal denied.
Motion for new trial overruled.   Judgment for the State.

The case appears in the opinion.

*Artemus Weatherbee, County Attorney,* for the State.

*Donald F. Snow,* for the respondent.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, STURGIS, BARNES, JJ.

STURGIS, J.   The respondent was convicted of manslaughter.   He
thereupon filed a motion for a new trial which was denied by the
presiding Justice, and the case comes before this court on appeal from
that decision under R. S., Chap. 136, Sec. 28.   No exceptions have
been reserved, and the single question now before us is whether, in
view of all the testimony in the case, the jury were warranted in
believing beyond a reasonable doubt, and therefore in finding, that
the respondent was guilty of the crime charged against him.   *State
v. Mulkerrin,* 112 Maine, 544.   *State v. Albanes,* 109 Maine, 199.
*State v. Lambert,* 97 Maine, 51.

On the afternoon of July 29, 1925, the respondent, a young man
twenty-three years old, picked up the deceased, Irving Upton, a ten-
year old boy, and tossed him from the float in front of the yacht club
below Bangor into the deep water of the river which flowed by.   The
boy struck partially on his back, and being unable to swim, with only
a slight movement of one hand, sank and was drowned.   The sole
eye witness, Charles H. Jenkins, a boy eleven years old, gives in his
testimony this graphic description of the respondent's act:   "Well,
Pond came up and took Irving and he was going to throw him in, and
Irving said 'I cannot swim,' and I said 'No, he cannot,' and Pond
took him and threw him in."

The respondent in his defense testifies that the deceased boy con-
sented to all that was done.   He declares that he asked the boy, "Can
you swim?" and received the reply, "Yes, I can," and, "let her go."
He says he then dropped the lad from the slip believing that he could
swim.

That the respondent dove and made an earnest endeavor to rescue
the boy after he was in the water, is unquestioned.   His efforts
unfortunately, however, were unavailing.   After sinking once the
boy never rose, and his body was recovered some hours later when
the river was dragged with grappling irons.

The respondent's claim of consent and statement that he could swim, by the deceased, is attacked by the State, which offered the testimony of Officer Golden who assisted in the search for the boy's body. The officer testifies that the respondent at that time did not assert consent by the deceased or a statement of his ability to swim, but told the officer that "I was fooling with the fellow and tossed him overboard; I thought he could swim."

The State offered the testimony of playmates and members of the family of the deceased from which the jury, we think, could have well found that the deceased was unable to swim, and unless they believed the respondent's story, which evidently they did not, were justified in drawing the inference that he had no ground for belief that the victim of his horse-play could support or propel himself in the water into which he threw him.

Manslaughter is the unlawful killing of another without malice aforethought either express or implied, and may be either voluntary, as when the act is committed with a real desire and purpose to kill but in the heat of passion occasioned by sudden provocation; or involuntary, as when the death of another is caused unintentionally by some unlawful act not amounting to a felony nor likely to endanger life, or while doing some lawful act in an unlawful manner. *State* v. *Conley*, 39 Maine, 78. *Commonwealth* v. *Webster*, 5 Cush., (Mass.), 295. *Commonwealth* v. *Pierce*, 138 Mass., 165. 13 R. C. L., 784. R. S., Chap. 120, Sec. 2.

It is accordingly held that it is manslaughter when one kills another as the result of a practical joke which was a surprise to the deceased, and where death is imputable to physical agencies put in motion by the perpetrator. Wharton on Homicide, 346. Within this rule falls death resulting from building a fire around a drunken man *Errington's Case*, 2 Lewin C. C., 217; upsetting a cart as a joke, *Rex* v. *Sullivan*, 7 Car. & P., 641; administering as a joke excessive quantities of intoxicating liquor, *Rex* v. *Martin*, 3 Car. & P., 211; throwing a thief into a pond without apparent intention to drown him, *Rex* v. *Fray*, East., P. C., 236; and in close analogy to the facts of the instant case, seizing and carrying a boy eleven years old into the deep waters of the Smoky Hill River where he was drowned, *State* v. *Radford*, 59 Kansas, 591.

That the drowning of the deceased was unintentional on the part of this respondent we have no doubt. But from the facts appearing

in the record we are convinced that his act in throwing this boy into the Penobscot River, where as the evidence shows the water was twenty feet deep, was manslaughter.   If his seizure and toss of the boy into the river be viewed either as a minor assault and battery, or, as in *State* v. *Radford*, supra, gross and culpable negligence, or both, the essential elements of the crime of manslaughter are present.   To quote Bishop on Criminal Law, 6th Ed., Vol. 1, Sections 313, 314; "There is little distinction, except in degree, between a positive will to do wrong and an indifference whether wrong is done or not.   .   .   . Every act of gross carelessness, even in the performance of what is lawful, and, a fortiori, of what is not lawful, and every negligent omission of a legal duty, whereby death ensues, is indictable either as murder or manslaughter."

A careful study of the occurrences of this tragedy which were either uncontroverted or which from the evidence the jury were warranted in believing took place, not only justified but demanded the verdict rendered.

> *Appeal denied.*
> *Motion for a new trial overruled.*
> *Judgment for the State.* ·