No. 25896. CAIN *v.* THE STATE.

DECIDED MARCH 4, 1937.

*W. L. Nix,* for plaintiff in error.
*Clifford Pratt, solicitor-general,* contra.

MACINTYRE, J. The defendant was convicted of involuntary manslaughter in the commission of an unlawful act. His motion for new trial was overruled, and he excepted. The evidence, considered in its most favorable light to the State, was to the effect that the defendant was driving north from Lawrenceville in the direction of Winder, on the wrong side of the road, at night, with-

out lights, in a Ford truck loaded with wood, and was intoxicated, and when he reached a distance of about 100 or 125 feet from the top of a hill, a car driven south by one Bowden from the direction of Winder came over the hill and struck the truck of the defendant, disabling it, and blocking the right-hand side of the road going south from Winder. In a few minutes the sheriff of Banks County (the wreck having occurred in Hall County) came along going north toward Winder, passed the wrecked truck, went on up the road a sufficient distance not to interfere with traffic, returned to the scene of the wreck, and there told the defendant, the driver of the truck, that they had better get it out of the road or somebody would be hurt. Whereupon the defendant replied, "Let the d—fools go if they haven't got any more sense than to run into it." However, he went on off to get help to remove the truck, and in a few minutes another car driven by Peek came over the top of the hill, coming south from the direction of Winder. The driver of the second car testified that the wreck was so close to the top of the hill that his lights had not had sufficient time to come down and focus upon the road, and that he was so close upon the wrecked car that he struck it after putting on his brakes, and knocked it over on the sheriff who was standing near by, and killed him. A deputy sheriff, who was with the sheriff at the time and standing near the wrecked car when the second car came over the hill, saw that it was about to hit the wrecked truck, and called to the sheriff to look out, that another car was going to hit it. The deputy sheriff and the sheriff's son jumped off of the paved section of the road, and were uninjured. The defendant and his witnesses denied that he was drunk, that he was running at night without lights, and that he was running on the wrong side of the road. They said that the first car struck him on his side of the road and drove his car over on the wrong side, and that when he saw that it was impossible to get off the road he left to get help, and that while he was gone the sheriff was killed.

The judge, after having charged that certain acts would be a violation of the statutory law of Georgia, which he denominated as "the law of the road," charged the jury as follows: "Now, applying that law of the road to the case now on trial, if you should believe beyond a reasonable doubt from the testimony of the witnesses and the statement of the defendant that the death of Owen

McCoy was caused by the running and operation of the truck or automobile in question by the defendant's refusal and failure to comply with the law of the road, as already stated to you, and that the death of Owen McCoy was caused by such violation or was the cause of his death by such operation of the truck or automobile, the defendant would be guilty of the offense of involuntary manslaughter in the commission of an unlawful act." Did the court correctly observe the difference between civil liability and criminal responsibility? Did the charge clearly define civil negligence in the law of torts, and then add that criminal negligence in the law of crimes is something more than actionable negligence in the law of torts? Preliminary to answering these questions it might be helpful to try to draw the line, shadowy though it may be, which separates the two. ·

"A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." Code, § 26-201. The degrees of negligence are as follows: 1st. "Slight negligence.—In general, extraordinary diligence is that extreme care and caution which every prudent and thoughtful person exercises under the same or similar circumstances. . . The absence of such diligence is termed slight negligence." § 105-202. 2d. "Ordinary negligence.—In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the the same or similar circumstances. . . The absence of such diligence is termed ordinary negligence." § 105-201. 3d. "Gross negligence.—In general, slight diligence is that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances. . . The absence of such care is termed gross negligence." § 105-203. 4th. Wilful and wanton negligence. In the case of the first two of these degrees of negligence, contributory negligence, when properly pleaded and established, defeats a recovery in the law of torts. In the third degree of negligence, where a guest is injured, the rule is that contributory negligence, as such, does not defeat a recovery in a civil action, and in the fourth, contributory negligence, as such, does not defeat a recovery in the law of torts. The degree of negligence to be shown on indictment for manslaughter, where an unintentional killing

is established, is something more than is required on the trial of an issue in a civil action. A want of due care, or a failure to observe the rule of a prudent man, which proximately produces an injury, will render one liable for damages in a civil action; but to render one criminally responsible there must be something more, culpable negligence, which under our law is criminal negligence, and is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others and a reasonable foresight that injury would result. State *v.* Durham, 201 N. C. 724, 731 (161 S. E. 398); *Tift* v. *State,* 17 *Ga. App.* 663 (88 S. E. 41). We think the words "criminal negligence" are synonymous with the words "culpable negligence." "The lexicons tell us that Cicero and Horace used the word 'culpa' in the sense of crime; fault; and in some metonymic senses. Formerly, the primary meaning of the English word 'culpable' was criminal; deserving punishment. Dr. Johnson's dictionary defined the word thus: 'Criminal. Shak. Guilty. Spenser. Blameworthy. Hooker.' In popular use, the primary meaning has now shaded down to: deserving blame or censure; blameworthy. Oxford English Dictionary. In Blackstone's chapter on Plea and Issue, it is said a prisoner desiring to plead the general issue, or not guilty, pleaded, 'Non culpabilis,' or 'Nient culpable.' The clerk entered the plea on the minutes, 'Non cul.,' or, 'Nient cul.'" State *v.* Custer, 129 Kan. 381 (282 Pac: 1071, 67 A. L. R. 909, 912-915). Under our law, criminal negligence may be either gross or wilful and wanton negligence, but not merely slight or ordinary.

■ "The difficulty of attaining perfection in defining 'culpable negligence' is apparent, but it is agreed that the words necessarily imply something more than a lack of precaution or the exercise of ordinary care. An instruction to the jury merely in the words of the latter proposition is not sufficient; it should explain wherein the distinction consists. Ordinary negligence is based on the theory that a person charged with negligent conduct should have known the probable consequences of his act; culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly [which must at least be gross negligence], or wantonly indifferent to the results. With respect to the breach of a statute enacted in the interest of public safety,

a basic concept may involve the distinction between the intentional violation of the statute and the negligent failure to observe its provisions. If a person driving a motor vehicle upon a highway intentionally violates the provisions of statutes regulating the operation of motor vehicles on the public highways of the State, and thereby proximately causes personal injury or death, he is deemed to be criminally culpable, and in the one case is guilty of assault and battery and in the other manslaughter. If he acts in violation of a positive statute and his violation is the direct cause of the injury or death, the intent may be implied, although it is ultimately a matter for the jury to determine under instructions given by the court. Such person would likewise be criminally culpable if he operated a motor vehicle upon a public highway in violation of the statutes, and such violation disclosed a reckless disregard of consequences or a heedless indifference to the rights and safety of others and reasonable foresight that injury would probably result. State *v.* Agnew, 202 N. C. 755 (164 S. E. 578). But if he did not violate any of these statutory provisions intentionally or recklessly but failed to observe them merely through a want of ordinary care, he would not be held to be guilty of culpable negligence unless the prohibited act was in itself dangerous—i. e. likely under the circumstances to result in death or bodily harm." State *v.* Stansell, 203 N. C. 69, 72 (164 S. E. 580). The breach of a statute is negligence per se, but there must be a causal connection between the disregard of the statute and the injury inflicted. However negligent a party is, if his act stands in no causal relation to the injury, it is not actionable. In a case of manslaughter, the negligence of the defendant must be the proximate cause of the death, in order to constitute such crime. *W. & A. R.* v. *Leslie,* 48 *Ga. App.* 714 (173 S. E. 170), State *v.* Durham, 201 N. C. 724 (5) (supra); Prince *v.* State, 12 Ohio App. 347, 350. If in a given case the injury complained of did not flow naturally and directly from the wrongful act or omission attributed to the defendant, or could not reasonably have been expected to result therefrom, or would not have resulted therefrom but for the interposition of some independent, unforeseen cause, the defendant's such antecedent wrongful act or omission would not be the proximate cause of the injury complained of. *Andrews* v. *Kinsel,* 114 *Ga.* 390, 392 (40 S. E. 300, 88 Am. St. R.

25); *Cochran* v. *Kendrick,* 43 *Ga. App.* 135 (158 S. E. 57). On the other hand, "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrong-doer, or was in reality only a condition on or through which the negligent act operated to induce the injurious result." 2 Reid's Brandson's Instructions to Jury, 149 § 337.

Contributory negligence, as such, has no place in a case of involuntary manslaughter. Contributory negligence on the part of the deceased implies that the negligence of the defendant was one of the causes of the death (as distinguished from a self-inflicted wound); but if the act of the deceased which caused his death happened to be a negligent one, and was the sole proximate cause of the injury or death (as in the case of a self-inflicted wound or injury), and thus the deceased met his death wholly as a result of his own misfortune and not because of the defendant's culpable or criminal negligence, the defendant would not be guilty. State *v.* Eldridge, 197 N. C. 626 (150 S. E. 125). The familiar rule that contributory negligence of the person injured or killed by the negligence of the defendant in the operation of an automobile, if greater than the negligence of the defendant, bars a recovery in a civil action in a proper case laid and proved, has no application to a prosecution for homicide due to criminal negligence in operating such automobile. In such case the decedent's behavior may have a material bearing on the question of the defendant's guilt; but if the criminal negligence of the latter is found to be the cause of the death, he is criminally responsible whether the decedent's failure to use due care contributed to the injury or not. The case is one of the State against the defendant, and not one of a party seeking damages against the defendant. In some criminal cases the conduct of the decedent, whether negligent or not, is material to the extent that it bears upon the question whether under all the circumstances of the case the defendant was negligent, or, if negligent, whether the decedent's negligence was the sole proximate cause of the injury, or whether the injury or death resulted from an unavoidable accident. 5 Am. Jur. 930; § 796; *Carbo* v. *State,* 4 *Ga. App.* 583 (62 S. E. 140). It is desirable, as far as possi-

ble, that the explanation to a jury of criminal negligence such as "gross," "wicked," or "culpable," should not be a mere question of epithets; and in trials for manslaughter by negligence it should be impressed upon the jury that the issue they have to try is not negligence, as such or no negligence, but felony or no felony, crime or no crime. 67 A. L. R. 917. Criminal negligence is something more than negligence which gives rise to money damages or compensation, and is such recklessness or carelessness amounting at least to gross negligence, proximately resulting in injury or death, as is incompatible with a proper regard for the safety or rights of others; and the violation of the safety statute regulating the use of highways does not constitute criminal negligence, unless such violation is intentional, wilful, or wanton, or unless the violation, though unintentional, is accompanied by recklessness or is under circumstances from which probable death or injury to others might be reasonably anticipated. State *v.* Cope, 204 N. C. 28 (167 S. E. 456). The judge's charge in this case, taken in its entirety, applied the test of civil liability rather than the test of criminal responsibility. In this there was reversible error.

■ The indictment on which was returned "no bill" against the driver of the second car that hit the disabled truck of the defendant, knocking it over on the deceased and killing him, was improperly admitted in evidence against the defendant. The proceedings in determining whether or not an indictment is returned a "true" or "no" bill are usually conducted in this State in the absence of the defendant, without the aid of counsel, and often in the absence of the most material witnesses both for the prosecution and the defense. To admit the indictment thus arrived at, to be used as evidence on the trial, to influence, perhaps control, the verdict of the jury, would, in our opinion, be inevitably prejudicial. See, in this connection, *Royal Arcanum* v. *Quarles,* 23 *Ga. App.* 104 (97 S. E. 557); *Central R. Co.* v. *Moore,* 61 *Ga.* 151 (2); Whitehurst *v.* Com., 79 Va. 557; Ætna Life Insurance Co. *v.* Milward, 118 Ky. 716, 725 (82 S. W. 364, 68 L. R. A. 285, 4 Ann. Cas. 1092).

Headnote 8 needs no elaboration.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*