STATE OF MAINE

*vs.*

WALTER R. NEWCOMB

Androscoggin.   Opinion, February 20, 1951.

*Edward J. Beauchamp,*
*Irving Isaacson,* for State of Maine.

*Berman & Berman,*
*Harold L. Redding,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   This case presents an appeal by a respondent, convicted of taking "indecent liberties" with a female child eleven years of age (see R. S., 1944, Chap. 121, Sec. 6), from the denial of his motion for a new trial, and his exceptions to three portions of the charge to the jury that found him guilty of the offense charged.

## THE APPEAL

Counsel for the respondent argues that the appeal should be sustained on the ground that the charge as a whole, and not merely the particular portions thereof challenged by the exceptions, was prejudicial to the rights of his client.   Authority for sustaining an appeal for an error in a charge to which no exception was taken, or for lack of instruction on a question essential for the consideration of a jury, despite the lack of a request for an instruction to supply the omission, is found in *State* v. *Wright,* 128 Me. 404, 148 A. 141, and *State* v. *Peterson,* 145 Me. 279, 75 A. (2nd) 368, both of which are cited.   The present case is not comparable to either.   It is not contended in this case that the charge did not cover every essential question.   The excerpts of the charge, as quoted in the Bill of Exceptions, comprise an approximate half of the whole, and include every word therein which might even be claimed to offer any semblance of foundation for the assertion of prejudice.

Counsel relies, in this connection, as in his argument on the Second Exception, *infra,* on the language used by this court in *State* v. *Brown,* 142 Me. 16, 45 A. (2nd) 442, declaring that in the class of cases in which the present one falls:

> "a heavy responsibility rests upon a judge to see to it that the members of a jury are in a temperate frame of mind and that they consider the evidence*
> impartially and without bias toward a respondent."

A careful reading of the charge discloses that this responsibility was met fully. Between those portions challenged by the Second and Third Exceptions, quoted *infra*, the jury was instructed that the case then being placed in its hands was:

> "important to the State and it is important to this respondent. If this man has not committed this crime, he should be acquitted. If you believe from the evidence, you as reasonable men and women, that the crime was committed, then it is your duty under your oath to bring in a verdict of guilty. It is essentially a question of fact. You should not allow any sentiment, feeling or sympathy to at all affect you, and I mean sentiment, feeling or sympathy for this little girl or for this respondent, to affect your finding in this or any other case."

This is adequate to satisfy that responsibility and the necessity for caution which Sir Matthew Hale had in mind in his declaration that some accusations are:

> "easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent."

See 1 Hale's Pleas of the Crown, 635, as quoted in 52 C. J. 1087, Par. 118. Footnotes in Corpus Juris cite many cases in which the evidence adduced was declared either sufficient or insufficient in appellate proceedings, but although the text is cited, there is no reference to a precedent supporting the claim of the respondent, that the uncorroborated testimony of a single witness is insufficient to justify a conviction. In last analysis, all authorities are agreed that the factual issue of the guilt or innocence of a party accused of any crime must always be resolved by a jury.

Whether the testimony of the eleven year old child who was the only witness presented by the State, except in rebuttal, was adequate to prove the facts necessary to establish the guilt of the respondent beyond a reasonable doubt,

was for the jury to determine. Proof beyond a reasonable doubt was requisite. *State* v. *Lambert,* 97 Me. 51, 53 A. 879; *State* v. *Mulkerrin,* 112 Me. 544; 92 A. 785; *State* v. *Howard,* 117 Me. 69, 102 A. 743; *State* v. *Dodge,* 124 Me. 243, 127 A. 899; *State* v. *Pond,* 125 Me. 453, 134 A. 572; *State* v. *Wright, supra.* The jury was so instructed. In discussing that requirement reference was made in the charge to the fact that the jurors, or some of them, had been instructed in an earlier case that such was the burden of the State. Thereafter the justice said:

> "I discussed reasonable doubt with you at some length and wound up by saying that the State must establish the truth of the facts charged to a reasonable certainty. That is what it means in the final analysis. That is the burden which the law places on the State in this and all other criminal cases, to satisfy you to a reasonable certainty that the offense alleged in the indictment has been committed."

A final claim in support of the appeal is that the child was not consistent in her testimony. The ground for this assertion is that the essential facts were stated more fully in one recital of them than in another. On this point the authorities cited are *State* v. *Terrio,* 98 Me. 17, 56 A. 217, and *State* v. *Morton,* 142 Me. 254, 49 A. (2nd) 907. Again it must be said that the present case is not comparable to either. True it is that all the principal facts proved in a criminal case must be both consistent with each other and inconsistent with the innocence of the person accused, but the issue of consistency does not depend upon exact repetition. It was for the jury to decide what the facts were, resolving all questions of credibility in reaching its decision. *State* v. *Lambert, State* v. *Howard, State* v. *Dodge,* all *supra.* The jurors heard the testimony. The child and the respondent told stories squarely in conflict with each other. The jury elected to believe that told by the child and reject that told by the respondent. It found, as a fact, that the offense,

as charged in the indictment, had been committed. On the record it cannot be said that its decision was not supported by evidence entirely credible.

## THE EXCEPTIONS

The Bill of Exceptions quotes three excerpts from the charge which it identifies as the portions challenged by four exceptions stated in general terms, at the close thereof. We take them up in reverse order because the argument on the First Exception is based in part on some of the language in the charge quoted in the Second.

In the first instance we note that two of the exceptions taken, relating to:

"the expression where the Court said in substance that the jury may condone wrong,"

and:

"that part * * * where the Court discussed personal wrong or wrongs to the family,"

must be considered to have been consolidated in the Third Exception, although nothing which appears in the quoted excerpt, or elsewhere in the charge, suggests that a jury has any power or authority in the field of condonation. The language of the charge challenged by the Third Exception is:

"A jury should be just as cold blooded in deciding cases as is possible for human beings to be, because as I said to you yesterday, outside of this Court Room, in those matters which involve you personally, wrongs committed to you personally or to your family, you may forgive and forget to your heart's content. As I said to you, sometimes it is a virtue to be applauded and commended, but you are not playing that role in this Court Room. You may not exercise that privilege which is sometimes given to the individual in those matters which concern and involve him personally."

For the claim that this language, or any part of it, operated to prejudice the rights of the respondent, no authority is cited. Read without reference to the context in which it appears, it carries no statement designed to prejudice the rights of the respondent. Read in that context, noting that it was preceded immediately by the admonitions heretofore quoted, that the jurors should consider the evidence "as reasonable men and women" and should not be influenced by any "sentiment, feeling or sympathy" for either the girl or the respondent, its propriety cannot be doubted.

The language of the charge challenged by the Second Exception reads:

"The State relies, as I understand it, on the testimony of this little girl. The State says to you that there is no corroborative evidence available, and for that reason it could not furnish it to you. They bring in this little girl, a girl of eleven, going on twelve I believe, to tell you what happened. The question is whether you believe what she says. The whole case depends on that. It will stand or fall on her testimony. Is she telling the truth? That is your inquiry, and it is your responsibility to determine that. If she is not telling the truth, why? I think that is a proper question for you to ask yourselves. If somebody is not telling the truth, the test is why is not that person telling the truth, for what reason. That is a source of inquiry or should be a source of inquiry in this case. Why should she, out of whole cloth, make up a story such as she gave on the witness stand. Is she deliberately committing perjury? Is this a figment of her imagination? Is she testifying about a situation that never occurred, that never existed? Is she telling you about facts that never happened? It is not the quantity of testimony, Mr. Foreman and members of the jury, that counts in any case; it is the quality of the testimony. You can readily imagine a case where a dozen witnesses might come into Court and be reluctant to admit what they knew. You might conclude * they are not telling .

the truth. That is where you play your greatest role. You might on the other hand have one person who tells you a story; apparently willing to tell you what that person knew about the case. It is easy to imagine a case where one witness might prevail against many witnesses. It is the quality you are interested in. You should consider it carefully; it is an important case. The rules of evidence are the same as in any other case."

The argument on this Second Exception is that it overemphasized the evidence of the child and the weight to be given to it. The declaration of this court, in *State* v. *Brown, supra*:

"that the summation of the evidence * * * was one-sided in that attention was called unduly to the testimony favorable to the state and but little comment * made on that of the respondent,"

quoted and relied on, is not pertinent. In this case there was no summation of testimony. The State's principal witness told a story denied on every essential point by the respondent. The forthright instruction was given that the case depended entirely on whether or not the jury believed the evidence of that witness. Most, if not all, of the tests which might be applied in determining the issue of her veracity were recited.

The First Exception cannot be disposed of by reference to the language of the charge quoted in connection with it in the Bill of Exceptions, without more. That language reads:

"Much has been said about corroboration, As a matter of law, there is no need of corroboration. That is not a legal defect in the State's case; the evidence of this little girl, if believed, is sufficient, even though she is not corroborated in the least. If corroboration is available in any given case, civil or criminal, the other litigant may well comment and criticize, and it might be a source of inquiry on the part of the jury to ask why, if cor-

> roboration was available and was not produced, why it was not produced. Is there any corroboration available in this case? If there is, why was it not produced? If there is not any corroborative evidence, then of course it could not be produced."

In arguing that this was prejudicial, counsel for the respondent asserts that it was erroneous "in practically every respect," which, by implication at least, challenges the instruction that "there is no need of corroboration," to which we shall allude later. Before doing so, however, we note that he relies especially on the sentence "Much has been said about corroboration," the words "legal defect" and one sentence of the excerpt of the charge quoted in connection with the Second Exception. That sentence is:

> "The State says to you that there is no corroborative evidence available, and for that reason it could not furnish it to you."

The claim is that the statements that much had been said about corroboration and that the State had said no corroborative evidence was available constituted error because the record is barren of any reference to corroboration and instructions to a jury must always "be based upon the evidence" in the case in which they are given. If the assertion is intended to declare that neither the word "corroboration" nor the word "corroborative" appears in the record, it is correct, but counsel for the respondent in cross-examining the little girl laid the foundation for arguing to the jury that her testimony was not credible because she never told anyone that the respondent had done what her testimony asserts he did do for some days thereafter, or until she was apprehended as a truant by a school truant officer and questioned at the police station. In another connection counsel cites *State* v. *King*, 123 Me. 256, 122 A. 578 which carries an extended discussion of the admissibility of evidence that a child had complained to a parent or officer of acts similar to those which the jury found the respondent had committed

as corroborative of the testimony of the child. Whether or not the fact that this child told something to an officer or officers at the police station several days after the event was admissible to corroborate her testimony need not be considered. The State did not offer to prove it. Regardless of that, it is impossible to believe that counsel for the respondent, having laid the foundation for doing so, did not capitalize to the full, in his argument to the jury, not only on the complete lack of corroborative evidence, but on the admission of the child that she never told anyone that the respondent did what her testimony declares he did for a considerable time thereafter. It seems obvious that the charge dealt with the question of corroboration to clarify the issue presented to the jury in the light of the arguments made relative thereto. The instruction quoted was entirely proper in that regard, and we cannot believe, as counsel urges, that the words "legal defect" in the context in which they were used tended either to confuse the jury or advise it, as counsel for the respondent argues, that the lack of corroboration "had no bearing upon the case."

This leaves the issue, never presented squarely heretofore in this jurisdiction, whether a conviction for the crime charged against this respondent, or for any crime in the class in which it falls, is sustainable if based solely on the uncorroborated evidence of a single witness. The instruction that there was no necessity for corroboration is in accordance with what is said to be the general rule at common law for crimes generally, 16 C. J. 760, Par. 1561; 23 C. J. S. 136, Par. 903, and particularly for "offenses against the chastity of women." Wharton's Criminal Evidence, Sec. 1398. An annotation in 60 A. L. R., commencing at Page 1124, collects a great number of cases, which disclose that where rape is charged, the common law rule prevails, in the absence of statute. Massachusetts, Connecticut and Minnesota have applied it to cases similar to the present one. *Commonwealth* v. *Bemis*, 242 Mass. 582, 136 N. E. 597;

*State* v. *Lattin,* 29 Conn. 389; *State* v. *Zimnaruk,* 128 Conn. 124, 20 A. (2nd) 613; *State* v. *Dziob,* 133 Conn. 167, 48 A. (2nd) 377; *State* v. *Trocke,* 127 Minn. 485, 149 N. W. 944; *State* v. *Wassing,* 141 Minn. 106, 169 N. W. 485. The Massachusetts Court, in *Commonwealth* v. *Bemis, supra,* declared squarely that:

> "The testimony of the single witness if believed was sufficient to sustain the charge"

of assault with intent to ravish. The Minnesota Court, in *State* v. *Trocke, supra,* made a comment that seems well designed to apply to the present one, i. e.:

> "The testimony is not elevating, and we shall not rehearse it. The prosecutrix testified to the commission of the act charged in the indictment, at the time therein charged, and to the commission of * similar acts * *. Her testimony was contradicted by defendant, but, if believed by the jury, was sufficient to sustain the verdict."

It was said, in that case, thereafter, following the citation of authorities to support the principle declared, that the testimony of the prosecutrix was:

> "corroborated to some extent by the conduct of the defendant."

In this case there is corroboration for that part of the story told by the little girl concerning the manner in which the respondent locked the door of the small shed in which she says the events occurred, which simultaneously contradicts a part of the evidence of the respondent. The corroboration was supplied by a police officer who inspected the premises. His evidence that the door could be locked by a stick he found in the shed corroborates the statement of the little girl that the respondent locked the door on the inside "with a stick." It contradicts, squarely, the respondent's statement that there was "nothing there," meaning in the shed, to lock the door.

*Judgment for the State.*
*Exceptions overruled.*
*Appeal dismissed.*