STATE OF MAINE
*vs.*
KENNETH P. JONES

Hancock.    Opinion, October 26, 1956.

*William Fenton,* for State.

*Silsby & Silsby,*
*Herbert T. Silsby II,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TAPLEY, JJ., MURRAY, A. R. J. WEBBER, and BELIVEAU, JJ., dissent. CLARKE, J., did not sit.

TAPLEY, J. On exceptions. The respondent was tried on an indictment charging that he, while being then and there on a hunting trip, did feloniously, negligently and carelessly shoot and wound a human being. The case was tried at the December Term, 1955, of the Superior Court within and for the County of Hancock. Upon conviction by the jury the respondent was sentenced. The case is before us on the following exceptions:

1. To a portion of the presiding justice's charge to the jury which, in substance, charged civil negligence and carelessness.

The excepted portion of the charge also contains instruction by the court that contributory negligence on the part of the victim is not an issue.

2. The respondent requested the following instruction which was denied:

"Criminality is not predicated upon mere negligence necessary to impose civil liability, but upon that degree of negligence or carelessness which is denominated gross or culpable."

3. To the refusal of the presiding justice to direct a verdict of not guilty.

The basis of the prosecution is found in the provisions of Sec. 146, Chap. 37, R. S. 1954, the pertinent portion of which reads as follows:

"Whoever, while on a hunting trip or in the pursuit of wild game or game birds, negligently or carelessly shoots and wounds, or kills any human being, shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 10 years."

190

The first two exceptions concerning the charge as to negligence and carelessness and the refusal to instruct as to "criminal negligence" so-called, brings in sharp focus the interpretation of the words "negligently or carelessly" as used in the statute upon which the respondent was prosecuted and convicted.

The respondent claims prejudice and aggrievement because the jury was instructed on civil negligence and carelessness, while the State argues that such definitions were legally proper in light of their use in the statute. There can be no question that we are dealing with a penal statute. According to the terms of this statute, a person may be convicted for negligently or carelessly shooting and wounding a human being, such as in this case, or he may be convicted of homicide.

There would be no problem if the prosecution under Sec. 146, Chap. 37, R. S. 1954 was for the killing of a human being by the respondent while he was "then and there on a hunting trip." The instructions of the presiding justice would, no doubt, have followed the well accepted and recognized rule of gross or culpable negligence which it is necessary to establish in a conviction of involuntary manslaughter. *State of Maine* v. *Ela,* 136 Me. 303; *State of Maine* v. *Hamilton,* 149 Me. 218. Under the circumstances of this case we are dealing with a statutory creation which in effect defines a crime and provides punishment therefor. The essential element of the crime to be proven beyond a reasonable doubt is that the respondent did *negligently* or *carelessly* shoot and wound a human being.

The statute is not only penal but, by the punishment it prescribes, puts itself in the category of a felony statute. In order to approve the instruction of the presiding justice of civil negligence, we must say that this penal statute is divisible by interpretation to the extent that the homicidal portion requires instructions on gross and culpable negli-

gence, while the crime of a lesser degree is committed by a person who is guilty of civil negligence and carelessness.

We start wth the premise that we are considering a statute which defines a crime and provides punishment for its violation; in other words, it is a "criminal statute." The attorney for the respondent cites with confidence the case of *State* v. *Wright*, 128 Me. 404. The *Wright* case treats of the crime of manslaughter and holds that the degree of negligence or carelessness in such a case must be gross or culpable. The prosecution in the *Wright* case was based on Sec. 3, Chap. 129, R. S. 1930, the pertinent provisions of which are identical with the statute involved in the instant case. Sec. 146, Chap. 37, R. S. 1954. The late Chief Justice Sturgis wrote, on page 405:

> "At the trial, the prosecution relied upon involuntary manslaughter and offered evidence to prove that the respondent, while on a hunting trip, negligently shot the deceased as he rode by on horseback."

and following this statement he said:

> "Criminality is not predicated upon mere negligence necessary to impose civil liability but upon that degree of negligence or carelessness which is denominated gross or culpable. \*\*\*\*\*\* In his charge to the jury, the presiding Justice inadvertently failed to observe this distinction between civil and criminal negligence, instructing the jury to measure the respondent's guilt by the rules of negligence applicable only to civil cases."

The interesting portion of this quote, insofar as the instant case is concerned, is not the degree of negligence or carelessness determined to be necessary in the manslaughter case in which these elements were involved but rather the reference to *"criminality* is not predicated upon mere negligence necessary to impose civil liability" and "the presiding Justice inadvertently failed to observe this distinction be-

tween *civil* and *criminal* negligence." (emphasis ours). *Turner* v. *State* (Ga.), 16 S. E. (2nd) 160. This case involved a statute prohibiting any person from unlawfully, carelessly or negligently setting fire to woods, land or marshes thereby causing injury to others and further providing that such acts shall be termed misdemeanors. The court determined that the words "carelessly or negligently" as used in the statute meant criminal negligence. In defining criminal negligence the court said:

> " 'Criminal negligence is something more than ordinary negligence which would authorize a recovery in a civil action. Criminal negligence as used in our Criminal Code is the reckless disregard of consequences, or a heedless indifference to the rights and safety of others and a reasonable foresight *that injury would probably result.*' Cain v. State, 55 Ga. App. 376, 190 S. E. 371, 372."

The legislature in enacting Sec. 146 of Chap. 37, R. S. 1954, has created a statute which makes the negligently or carelessly shooting and wounding of a human being a crime. It has without equivocation placed negligent and careless acts under the provisions of the statute as criminal acts without specifying the degree of negligence and carelessness. We must bear in mind that the statute concerns a crime and not civil liability; that the punishment indicates the crime a felony and not a misdemeanor; that a person charged with a violation of this statute is entitled to all the protection afforded him by the rules of criminal procedure. When the presiding justice delivered his charge to the jury he instructed that the State must prove its case beyond a reasonable doubt and also that any contributory negligence on the part of the respondent was not "at issue here as such." These instructions were entirely proper, this being a criminal case and involving negligence. He then departed from the criminal aspect of the case and instructed the jury on civil negligence which in effect permitted the jury to re-

turn a criminal verdict based on a criminal statute with instructions of a civil nature defining the criminal act.

The statute does not within itself define the words negligence or carelessness. They are words synonymous in meaning.

There are many cases defining the word "negligence" with such superlatives as gross, culpable, wanton, slight, ordinary, civil and criminal. We have seen that in Maine, negligence in involuntary manslaughter cases must be gross or culpable, *State* v. *Ela, supra,* and there exists a distinction between civil and criminal negligence, *State* v. *Wright, supra. People* v. *Pociask* (Cal.), 91 P. (2nd) 199, at page 203:

> "Negligence assumes countless forms and occurs in all walks of life and human endeavor. Generally speaking, when actionable, it is a violation of private rights and injuries for which there is a remedy only by civil action. That the legislature has the power to declare negligence the basis and subject matter of a crime there can be no question. When so declared such negligence becomes criminal."

*State* v. *Lancaster,* (N. C.), 180 S. E. 577, at page 578:

> "In recent decisions, this court has definitely and unequivocally declared that in criminal cases involving negligent injuries and killing that the difference between culpable and criminal negligence and civil negligence must be observed and applied at the trial."

*Cooper* v. *State* (Okl.), 67 P. (2nd) 981, at page 988:

> "Negligence is criminal because it constitutes a violation of an obligation to the State."

We are considering a penal statute and, what is more, a felony statute. The rule of strict construction is applicable. *Smith, Petitioner* v. *State of Maine,* 145 Me. 313.

This respondent is entitled to an interpretation of the words "negligently or carelessly" which would be most favorable to him. *State* v. *Wallace*, 102 Me. 299.

The respondent was indicted under the provisions of a felony statute and, according to the statute, he upon conviction could be subject to a sentence of great severity. Conformably to the rules of criminal procedure, the State had the burden of proving beyond a reasonable doubt every essential element necessary to establish the offense. The subject matter of the crime as defined by the statute is the *negligent* or *careless* shooting and wounding of a human being. We have determined that negligence as used in this criminal statute is criminal negligence. There is a definite line of demarcation between civil and criminal negligence and the two classes are not consistent one with the other. Good reasoning dictates that a criminal statute that could in effect deprive a person of his liberty should not be subjected to both civil and criminal procedures. It must fall within one category or the other. A conviction could more easily be obtained on instructions of that degree of negligence which would support civil liability than the degree necessary to establish criminal responsibility.

The court below was in error in instructing the jury on civil negligence, and refusing to give the requested instruction.

There appears to be no necessity to consider respondent's exceptions to the refusal to direct a verdict of not guilty.

> *Exceptions pertaining to instructions regarding civil negligence and refusal to instruct sustained.*

WEBBER, J., DISSENTING

I find myself unable to agree with the opinion of the court. The issues presented seem to me of sufficient importance to

warrant some indication of the reasons which prompt a contrary view. The problem is one which has long troubled the justices at *nisi prius* as they faced the necessity of giving proper instructions to juries.

I do not understand that the court intends by its opinion to question the power of the legislature to define crimes so long as it keeps within the bounds of the constitution. That issue is not controversial. As was stated in 14 Am. Jur. 766, Sec. 16, "The legislature has the power to define what acts shall constitute criminal offenses and what penalties shall be inflicted on offenders, and generally to enact all laws deemed expedient for the protection of public and private rights and the prevention and punishment of public wrongs, the expediency of making any such enactment being a matter of which the legislature is the proper judge." The power of a legislature to define a crime based upon ordinary negligence has been recognized in other jurisdictions. *State* v. *Hedges,* 8 Wash. (2nd) 652, 113 P. (2nd) 530; *Clemens* v. *State,* 176 Wis. 289, 185 N. W. 209; *People* v. *Pociask,* 14 Cal. (2nd) 679, 96 P. (2nd) 788. I conclude that our legislature could then, if it saw fit, impose criminal penalties for ordinary negligence on the part of a hunter resulting in the shooting and wounding or killing of a human being. The issue is rather whether it has done so by the definition of the crime set forth in R. S. 1954, Chap. 37, Sec. 146.

The court holds that the negligence and carelessness referred to in that statute must be of the degree usually referred to as gross and culpable such as has always been required for a conviction for involuntary manslaughter at common law. *State* v. *Wright,* 128 Me. 404; *State* v. *Ela,* 136 Me. 303, 308; see *State* v. *Pond,* 125 Me. 453. The statute itself does not specify the degree of negligence. The question can be resolved only by ascertaining what the legislature intended by its use of the words "negligently or carelessly" in this particular enactment. The shooting and kill-

ing of another as the result of gross and culpable negligence spells involuntary manslaughter and is punishable under the provisions of R. S. 1954, Chap. 130, Sec. 8 by "a fine of not more than $1000 or by imprisonment for not more than *20 years."* (Emphasis supplied). The maximum sentence to imprisonment imposable under R. S. 1954, Chap. 37, Sec. 146 is, however, but *ten years.* If the negligence referred to in Chap. 37, Sec. 146 means what the court now holds that it means, we have an interesting paradox, for the legislature is providing two different punishments for the same crime, i.e., involuntary manslaughter. If the respondent killer is a hunter and prosecuted as such, the maximum term of years to which he can be sentenced is ten, but if he is a non-hunter, he faces a maximum sentence of twenty years. I cannot believe the legislature so intended. In my view, the legislature had in mind the alarming increase in so-called hunting accidents in our Maine forests. The recreation industry is one of the most valuable assets of the State. It will most certainly be impaired if hunters fear to enter the woods. An even greater consideration is the protection of our Maine citizens and our guests from death or bodily harm. I think it can safely be asserted that most of these tragic accidents result, not from any wanton or reckless indifference to the safety of others such as would base a charge of manslaughter, but rather from a simple failure to exercise ordinary care in the use of a deadly firearm. All too often, the respondent and his victim are related by ties of blood or marriage or have for many years been close friends or hunting companions. Rare indeed would be the case in which the State could show that one was recklessly indifferent to the safety of another to whom he was bound by such relationship. Rather are we dealing for the most part with the respondent who was morally certain that he saw game and who merely failed to take that long and careful second look which reasonable prudence demands before pulling the fatal trigger. In my view, the legislature in its

wisdom has concluded that only by imposing rigorous penalties for the failure to exercise ordinary care and prudence can the hunters who roam our woods be compelled to be careful. It seems clear to me that the legislature has defined a new crime made purposely severe as to the degree of negligence to be proven and limited in its application only to hunters. The holding of the court, requiring as it does proof by the State of gross and culpable negligence and a wanton disregard of consequences, seems to me to depart from the practical realities of the situation and virtually to emasculate the statute.

Cases cited in the opinion of the court which relate either to the degree of negligence required at common law as a basis for conviction for manslaughter, or to specific statutory definitions of "criminal negligence" in other jurisdictions, do not seem to me controlling of the issue before us. I find no suggestion in any of them that a legislature may not in the exercise of the police power and under proper circumstances impose penalties for the failure to exercise ordinary care. That is exactly what our legislature intended to do by its enactment of this law. My interpretation of the legislative intent underlying this statute was obviously shared by the learned justice below. I would overrule the exceptions.