STATE OF NORTH CAROLINA v. CHARLES RAY TRUEBLOOD

No. 781SC737

(Filed 16 January 1979)

1. **Homicide § 21.9— drowning—sufficiency of evidence of involuntary manslaughter**

   Evidence was sufficient for the jury in a prosecution for involuntary manslaughter where it tended to show that defendant, who was sixteen years old and the oldest in a group of boys, pushed deceased off a log into a pond, knowing that deceased could not swim, and that defendant at no time jumped into the water to try to rescue deceased, though he could swim and had rescued his brother shortly before he pushed deceased into the water.

2. **Homicide § 15.5— cause of death—admissibility of police officer's testimony**

   Experienced police officers could properly testify that the deceased died from drowning where the evidence was such that a layman of average intelligence and experience would know what caused the death, the testimony being more in the nature of a fact than an opinion.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 13 April 1978, Superior Court, PASQUOTANK County. Heard in the Court of Appeals 5 December 1978.

Defendant was charged with and convicted of manslaughter, resulting from the death by drowning of Nelson Williams, a seven or eight year old boy. Facts necessary for decision are set out in the opinion.

*Attorney General Edmisten, by Associate Attorney J. Chris Prather, for the State.*

*Twiford, Trimpi & Thompson, by C. Everett Thompson, for defendant appellant.*

MORRIS, Chief Judge.

Defendant's first assignment of error is directed to the court's denial of his motions for nonsuit made at the close of the State's evidence and renewed at the close of all the evidence. Defendant contends that the evidence in this case is not sufficient to support a verdict of guilty and not sufficient for submission to the jury. We disagree.

It is elementary that, on motion for nonsuit, the evidence, whether competent or incompetent, must be considered in the light most favorable to the State, and every reasonable inference must be drawn in favor of the State. *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193 (1977), *cert. denied*, 434 U.S. 924 (1978).

[1] Applying these guidelines, we find that the evidence presented at trial is sufficient to allow the jury to find the following:

On 20 April 1977, deceased and a friend, James Everett, skipped school. After they got out on the street, they saw defendant, a 16 year old boy who had stopped school in the 9th grade. He told them that some other boys were skipping school and had gone down to the Nature Trail at the Knobbs Creek Recreation Center. These other boys were all related to defendant. Deceased and James decided to go to the Nature Trail also. They had on school clothes. Deceased had on long pants. When they got to the Nature Trail, the others were already there. Part of the river runs up in the area behind the Nature Trail. Neither deceased nor James knew how to swim. Both were small and thin. Deceased found some "cut-off" shorts lying on the ground. He took off his school clothes and put on the shorts. He also found an old life

jacket. He put the life jacket on and went in the edge of the water. After he waded a bit, he came out. One of the youngest of the Trueblood boys went into the water to swim, but when he was "half way up to shore" he got in trouble and defendant, who had also arrived at the site, had to pull him out. There is some conflict in the evidence as to whether defendant grabbed his younger brother's hand or whether he jumped in and swam to him. Defendant said he jumped in and had to swim about 10 feet to reach his brother. In any event, defendant did save his younger brother. When deceased came out of the water after wading, he took off the life jacket, and he and defendant talked "there by the log". Defendant was telling deceased how to swim. He told deceased to move his arms and kick his feet when he was swimming. Deceased then walked out on a log on the bank next to the water. While deceased was standing on the log, defendant walked out on the log and pushed deceased. When deceased hit the water he was moving his arms backward. He was moving away from shore, and his head went under three times. The others asked defendant to save deceased but "he said he couldn't save him, to let him drown". Defendant never jumped off the log to try to save deceased. The water became deeper as one went away from the log. This was not the same place where defendant's younger brother had gone in. Defendant "reached" a stick to deceased but it did not get to deceased. He threw the life jacket, but it missed the mark. This was thrown after deceased had gone under the second time. Defendant had been swimming for about two years and had been swimming in this area only a few days prior to this occurrence. Defendant told the investigating officers that he knew deceased could not swim; that he knew he was the oldest person in the group and that he felt responsible for all the boys who were out there. Deceased was about the same distance from defendant as was defendant's brother Bruce when defendant had jumped in the water and saved Bruce. Bruce was "heavier and a whole lot bigger" than was deceased. Defendant further stated that he knew he should not have pushed deceased off the log and that he knew that pushing him off the log caused him to drown.

In *State v. Williams*, 231 N.C. 214, 56 S.E. 2d 574 (1949), the Court defined involuntary manslaughter as "the unlawful killing of a human being unintentionally and without malice but proximately resulting from the commission of an unlawful act not

amounting to a felony, or some act done in an unlawful or culpably negligent manner (citations omitted), and where fatal consequences of the negligent act were not improbable under all the facts existent at that time. (Citations omitted.)" 231 N.C. at 215-216, 56 S.E. 2d at 574-575. There the evidence tended to show that defendant and several women and children were bathing in a pond which was shallow near the banks but deepened to 10 or 12 feet in the center. Defendant, a man of some 30 or 35 years of age, approached the group and asked why they did not go out where it was deeper. He then waded out in the water. All the bathers ran out of the pond except deceased. She was about 16 years of age and was holding to a post in water not more than waist deep. Defendant, over her repeated protests that she could not swim, pulled her away from the post. Both fell over in the deep water and she drowned. The Court said:

> "There was no evidence of malice, or that the defendant in-tended to drown the girl, but against her will and over her protest that she could not swim he pulled her into deep water where she drowned. True the defendant came near drowning also but that did not palliate his action. The fatal consequences to Dorothy Lynn Smith under the evidence must be ascribed to the defendant's unlawful and culpably negligent conduct which it could reasonably have been fore-seen was likely to result in serious injury. (Citations omitted.)" 231 N.C. at 215, 56 S.E. 2d at 574.

Here there is no real evidnece of malice, but in our opinion, the jury could reasonably find from the evidence that deceased's death "must be ascribed to the defendant's unlawful and culpably negligent conduct which it could reasonably have been foreseen was likely to result in serious injury." *Id; see State v. Pond,* 125 Me. 453, 134 A. 572 (1926). Defendant's first assignment of error is overruled.

[2] Defendant next assigns as error the court's allowing into evidence testimony that Nelson was in fact dead and that his death resulted from drowning. It is true that authorities differ as to when a witness not a medical expert may express an opinion as to the cause of death, but "the general rule . . . is that the opinion of a nonmedical witness as to the cause of death is admissible if the witness is qualified by experience and observation to give an

opinion, and the facts to be interpreted are not of such a nature as to render valueless any opinion but that of an expert in a particular field. (Citations omitted). . . . 'There are many instances in which the facts in evidence are such that a layman of average intelligence and experience would know what caused the injuries complained of.' In such case, evidence is admitted upon the ground that it 'is more in the nature of a fact than an opinion.' (Citation omitted.)" *State v. Howard*, 274 N.C. 186, 197-198, 162 S.E. 2d 495, 502-503 (1968).

Here the evidence showed that a young boy who could not swim was pushed off a log; that his floundering carried him away from the log to deep water; that his head bobbed three times, and he was not seen again; that his body was recovered a very short time thereafter. Experienced police officers testified that the body they recovered from the river was a dead body. Certainly, that the child had died from drowning "is more in the nature of a fact than an opinion." *Id.* This assignment of error is without merit.

Finally, defendant contends the court committed prejudicial error in failing to give the jury a legal definition of reasonable doubt. The court is not required to define reasonable doubt absent a request to do so. *State v. Edwards*, 286 N.C. 140, 209 S.E. 2d 789 (1974). There was no request here. This assignment of error is without merit.

In defendant's trial we find

No error.

Judges PARKER and MARTIN (Harry C.) concur.